GERMAN-AMERICAN INSURANCE COMPANY *v.* BROWN.

AETNA INSURANCE COMPANY *v.* BROWN.

Opinion delivered April 29, 1905.

1. EVIDENCE—GOOD FAITH—COMPETENCY OF HEARSAY STATEMENTS.—Where an insurance company, sued for the loss of a stock of goods on which it had issued a policy, made defense on the ground that defendant, the surviving member of the firm which procured the insurance, swore falsely in the proof of loss concerning the value of the property, it was competent for him to introduce, as evidence of his good faith merely, letters and telegrams from his deceased partner tending to prove such value, it being shown that defendant had not examined the goods, which had been recently purchased, and had no knowledge of their value except that gained from an examination of the inventory and from the statements of his deceased partner. (Page 257.)

2. INCOMPETENT EVIDENCE—INVITED ERROR.—Where one party introduced incompetent evidence, he cannot complain of the action of the court in allowing the other party to introduce the same character of evidence directed to the same point at issue. (Page 257.)

3. SAME.—Where defendant, over plaintiff's objection, drew out the facts that plaintiff's partner, after the loss occurred, was charged with having burned the property, and thereupon committed suicide, and that deceased had written letters to plaintiff and another in which he stated his intention to commit suicide on account of such charges, it cannot complain of the introduction of the letters themselves wherein deceased asserted his innocence of the charges. (Page 257.)

4. TRIAL—REFUSAL OF ABSTRACT INSTRUCTION.—An instruction upon the theory that if the policy provided that the insurer should not be liable for a loss caused by neglect of the insured "to use all reasonable means to save and preserve the property" insured, and if plaintiff failed to use such means to save the property, this would avoid the policy, was properly refused if there was no evidence that either of the insured neglected "to use reasonable means to save and preserve the property." (Page 259.)

5. Fire insurance policy—failure of assured to save property.—Under a provision in a policy that the insurer shall not be liable for loss caused "by neglect of the insured to use all reasonable means to save and preserve the property at and after the fire," a negligent failure to use such means to save the property does not work a forfeiture of the entire policy, but prevents a recovery of the value of so much of the property as could have been saved by such means. (Page 259.)

6. Insurance—false statements in application.—While false and fraudulent statements of the insured, or fraudulent suppressions by them of matters of fact, relating to the value of the property to be insured avoid a policy, a misstatement as to such value which is made in good faith would not have that effect. (Page 260.)

7. Same—false statements in proof of loss.—Though a false and fraudulent statement of the value of the property destroyed by fire, made by the insured in his proof of loss, avoids the policy, the law is otherwise as to a misstatement of such value that is made in good faith. (Page 260.)

8. Same—insured causing fire.—If the insured, or either of them, set fire to and burned the property insured, they cannot recover. (Page 260.)

Appeal from Crawford Circuit Court.

Jeptha H. Evans, Judge.

Affirmed.

### STATEMENT BY THE COURT.

Appellee, J. R. Brown, as surviving partner of the firm of McKibben & Brown, composed of appellee and F. R. McKibben, deceased, brought separate suits against appellants upon policies of insurance issued by each in the sum of $2,000 upon a stock of merchandise situated at Duncan, Ind. Ter. The two cases were tried together, the pleadings and proof being the same in each case, and a verdict was returned in favor of the plaintiff against each of the defendants for the full amount of each policy with interest.

The defendants answered separately, denying each allegation of the complaint, but the only pleaded defenses which were insisted upon at the trial are the following:

First. That McKibben & Brown, at the time they procured the insurance, concealed or misrepresented material facts concerning the value of the property insured.

Second.   That appellant Brown was guilty of false swearing in the proofs of loss rendered by him concerning the value of the property.

Third.   That McKibben & Brown failed to exercise reasonable care, after discovery of the fire, to preserve the property, as required by the terms of the policies.

Fourth.   That the property insured was burned by McKibben or Brown or by their connivance and consent.

The last-named defense was settled by verdict of the jury upon conflicting testimony and under proper instructions of the court, and need not be further mentioned.

It appears from the proof that McKibben & Brown both resided at Van Buren, Ark., and on April 15, 1901, entered into a written partnership contract to purchase a stock of merchandise then at St. Paul, Minn., each to furnish one-half of the necessary capital, and to ship the same to Chickasha, Ind. Ter., or some other point to be agreed upon, there to engage in the mercantile business.   Thereafter McKibben went to St. Paul to purchase the stock, and, after repeated communication between the two, by wire and mail, bought a second-hand stock of goods, which, according to inventory, was of the value of $7,641.87, but which they purchased for the sum of $3,992.   One-half of the price was paid by Brown in cash, and the other half by McKibben in money and lands.   The goods were shipped to Duncan, Ind. Ter., and on arrival there McKibben & Brown, before the goods were unloaded from the cars, applied for and obtained the insurance policies sued on.   This was May 1, 1901, in the afternoon, and, as soon as the policies were issued, they removed the goods to the storehouse which they had rented to do business in.   The goods were not unpacked, and before daybreak on the following morning the house and all the goods were destroyed by fire. McKibben slept on a cot in the room adjoining the storeroom (a part of the same building), and, soon after the alarm of fire was sounded by the night watchman of the town, he emerged from the rear door of the building, half dressed and apparently greatly distressed and suffocated.   All the witnesses say that he sat upon the edge of his cot not far from the burning building in a helpless condition.   Brown occupied a room at a hotel in

the town that night, and appeared at the scene of the fire when it was well under way. Rumors were circulated, which came to the ears of McKibben & Brown, charging them with having set fire to the building, and the sentiment is shown to have been divided among the people of the town as to the cause of the fire, and much excitement prevailed. One Carson, who owned the building, openly charged McKibben with having set fire to it, and demanded pay for the value of the same; and McKibben agreed to pay $300 for the building when he collected the insurance, but later demanded the signature of Carson to a written agreement concerning the payment, reciting that McKibben promised to pay the amount to prevent blackmail.

The adjuster of appellants reached Duncan on May 6, and made an appointment with McKibben & Brown to meet the next morning to adjust the loss; but McKibben failed to meet the appointment, and was found during the day in a dying condition, having self-inflicted fatal wounds, from which he died in a few hours.

Subsequently Brown rendered proofs of loss to appellants, in which he set forth, under oath, the value of the goods to be the amount of the inventory, $7,641.87.

When McKibben & Brown applied for and obtained the insurance, they first stated to the agents of appellants who wrote the policies that they had a stock of goods worth about $8,000, and wanted $4,000 insurance, and later presented the inventory to the agents. They did not mention the fact that the goods were bought second-hand, nor the price they had paid. Other material facts proved are referred to in the opinion.

The court, of its own motion, instructed the jury, over the objections of the defendants, as follows:

"A. If Brown or McKibben, or either of them, knowingly made to the agents of the insurance companies a false and fraudulent statement of the value of the property to be insured, in order to procure the insurance, then the plaintiff cannot recover, and you should find for the defendants; but a misstatement of such value made in good faith, believing the same to be true, would not avoid the insurance.

"B.   If Brown in the proofs of loss knowingly made a false and fraudulent statement of the value of the property destroyed, by fire, then he cannot recover; but a misstatement of such value made in good faith, believing the same to be true, will not avoid the policy."

"C.   If Brown and McKibben, or either of them, set fire to and burned the property insured, or intentionally caused the same to be done, the plaintiff cannot recover.

"D.   If Brown and McKibben, or either of them, made any false and fraudulent statement as to matters of fact material to the risk to the agents of the insurance companies, or fraudulently suppressed any matter of fact material to the risk, in order to procure the insurance, then in such case the plaintiff cannot recover; but the mere omission to state that the stock was second-hand, or that they had bought it at a discount of forty-eight per cent., would not be sufficient to avoid the insurance, unless the same was done with intent to defraud."

E.   By 'cash value' is meant the cash market value at the time and place where the property was situated, and where the fire occurred, if there was such a market value. If there was no such market value there, then the cash value in the nearest adjacent markets; or, if that is not shown, then the intrinsic value of the property.   In determining the cash market value at the time and place where the fire ocurred, you may consider the intrinsic value of the property; what value, if any, it had in other adjacent markets; the ease or difficulty of transporting it from place to place; the demand or lack of it for such property; that it was second-hand, if it was such; the deterioration, if any, from value at first hand; the price paid for it by plaintiff and McKibben; the opinion of witnesses who knew the market or other value, if such are in evidence; and all other facts and circumstances in evidence tending to show the value.   Prospective and unrealized profits are not to be taken into consideration, but realized profits may be taken into consideration.

"F.   If you find for the plaintiff, you will ascertain the actual cash value of the stock destroyed, take three-fourths of it, and divide that equally between the two policies; but in no event can

you find against the defendants more than $2,000 each, exclusive of interest, no matter what the value of the property."

The defendant asked sixteen instructions, all of which were refused.

*Winchester & Martin,* for appellants.

The letters and telegrams from McKibben to Brown were improperly admitted. 42 Ark. 355; 51 Ark. 511. The statement of the court that a misstatement as to value of goods in good faith would not avoid the policy was error. 69 Ark. 137; 50 Ark. 545; 67 Ark. 594; 16 Ark. 329; 68 Ark. 106. The instruction as to concealing or misrepresenting material facts was error. Ost. Ins. 254; 10 Fed. 232; 79 Tex. 23; 7 Ark. 166. This court will uphold the conditions in the policy. 57 Ark. 279; 123 N. Y. 6; 69 Vt. 116.

*Oscar L. Miles* and *Lovick P. Miles,* for appellee.

The evidence wholly fails to establish the claim made by appellants that either McKibben or Brown burned the insured property. The suicide of McKibben is not an evidence of his guilt of that charge. Wh. Cr. Ev. § 750; Best's Ev. (5th Ed.), 578. Appellants having gone into the question first, it was competent for the plaintiff to put in evidence all the attendant facts and circumstances. 43 Ark. 99; 1 Greenleaf, Ev. § § 108-111; Wharton, Cr. Ev. § § 262-270; 1 Bish. Cr. Pro. § § 1083-1087; 20 Ark. 216; 1 Wall. 637; 8 Wall. 637; 22 Ark; 254; 12 Ark. 782; 8 Watts, 355; 8 N. H. 40; 4 Colo. 161; 1 Greenleaf, Ev. 144; 6 Car. & P. 325; 3 Cush. 181; 55 Pa. St. 402; 57 Mo. 93; 5 W. Va. 510; 30 La. Ann. 600; 4 Tex. App. 202; 35 Cal. 49; 1 How. 219; 47 Mo. 239; 34 Vt. 410; 25 Gratt. 921; 32 Ga. 672; 18 Ga. 635; 1 Taylor, Ev. § 588. In case of an open policy, over-valuation in obtaining it is immaterial. 38 Oh. St. 128; 1 So. 863; 46 Ind. 315; 1 Wood, Ins. § 235. The good faith of Brown being in issue, the information upon which he acted was competent evidence. 1 Wharton, Ev. § 35; Gillett, Ind. and Col. Ev. § 223a. 1 Conn. 387; 63 Vt. 667. The proper measure of recovery. 53 Ark. 27; 4 Dall. 430; 1 Wood, Fire Ins. § 471; 1 La. Ann. 216; 5 Pa. St. 183; 37 Pa. St. 205; 36 N. Y. 655; 1 Wood, Fire Ins. 1172.

McCulloch, J., (after stating the facts.)   1.   It is urged by appellants that the court erred in permitting appellee to introduce in evidence letters and telegrams addressed by McKibben while in St. Paul to Brown.   These communications all related to the negotiations and purchase of the goods, and the only objectionable features thereof were expressions of McKibben's opinion concerning the condition and value of the goods.   This testimony was competent for the purpose of showing Brown's good faith in fixing the value of the goods in the proof of the loss.   He stands charged with false swearing in that particular.   He had not examined the goods, and had no knowledge of the value except that gained from an examination of the inventory and the statements of McKibben.   The statement of value made in the proof of loss was not required to be within his personal knowledge, but any willfully false statement as to the value of the goods and amount of loss avoided the policy.   Therefore he was properly permitted to show his means of information upon which his statements as to value were based.

For another reason appellants are precluded from complaint at the introduction of this evidence.   They first drew out, on cross-examination of appellee, the testimony as to communications from McKibben, and read in evidence two of the telegrams received by appellee from him.   Where one party introduces incompetent testimony, he cannot complain of the action of the court in allowing the other party to introduce the same character of evidence directed to the same point at issue.   He waives all objection to error which he thus invites.   *St. Louis & S. F. R. Co.* v. *Kilpatrick,* 67 Ark. 47; *Klein* v. *German Nat. Bank,* 69 Ark. 140; *Standard Life Ins. Co.* v. *Schmaltz,* 66 Ark. 588; 1 Thompson on Trials, § § 706, 707; Elliott, App. Proc. § 626; *Reynolds* v. *State,* 27 Neb. 90; *Fillmore* v. *Union Pac. Ry. Co.,* 2 Wyo. 94.

For the same reason appellants cannot complain of the introduction by appellee of the McKibben letters written to his wife and to appellee Brown, respectively, immediately before his suicidal act.   Appellants invited the error by their own course of examination and introduction of testimony.   The letter addressed to appellee Brown was as follows:

"Duncan, I. T., May 7, 1901.

"J. R. Brown, Esqr.

"Dear Sir: Our business has been a failure, and I cannot live any longer, as it is only trouble. I want to be buried at Duncan, as I don't want my friends at home to forego the humiliation.. I am innocent of the charges made against me by Carson, and hope it may be known some time. You are justly entitled to your insurance, and should have it without delay. I hope you will be able to get a settlement without delay. Yours truly,

"F. R. McKIBBEN."

The letter to his wife was of the same import, except that it contained no reference to the Carson charges, and did contain matters of personal confidence and words of affectionate farewell to his wife and children. These letters were found by appellee in McKibben's valise the day of his death, but before discovery of his suicide.

Appellants first drew out, over the objection of appellee, the fact of McKibben's suicide, and all the circumstances thereof, and the charges made against him by Carson. On cross-examination, they elicited from appellee testimony concerning these matters and the conduct and statements of McKibben throughout. They caused appellee to state in his testimony the fact that he found the letters in McKibben's valise, and that they contained information of his suicidal intent. The manifest design of appellants in making this proof, together with the proof that McKibben was charged with having burned the property, was to draw the inference that he committed suicide because of his guilt of the charge, and to escape the consequences thereof. After putting all these irrelevant facts before the jury by incompetent testimony, and after proving the finding and existence of the letters, they cannot complain of the introduction of the letters themselves. The introduction of the letters was clearly invited error.

2. The court gave no instruction as to the defense tendered that McKibben & Brown failed to exercise care to preserve the property, and refused to give the following instruction on that subject asked by appellant:

"The court instructs the jury that if they find from the evidence that said contract of insurance contained a provision that

said defendant company should not be liable for loss caused directly or indirectly by neglect of the insured to use all reasonable means to save and preserve the property covered by said contract of insurance entered into between plaintiff and defendant at and after the fire, and if you find that plaintiff failed to use all reasonable means to save and preserve said property at or after the fire, said failure would avoid the contract, and defendant would not be liable to plaintiff for loss arising thereunder, and your verdict should be for the defendant."

This instruction was properly refused for two reasons. In the first place, there was no testimony tending to show that either McKibben or Brown had, in the language of the policy, neglected to "use all reasonable means to save and preserve the property at and after the fire." The burden was upon appellants to prove such negligence on the part of the insured. There was a conflict in the testimony as to whether or not some of the property could not have been saved by the bystanders, but none that either of the insured could have done so. The testimony introduced by appellants showed affirmatively that Brown did not reach the scene of fire until too late to have saved any of the property; and that McKibben was suffocated, and in a helpless condition, and unable, for that reason, to save any of the property.

The instruction was objectionable and improper for the reason that it, in effect, told the jury that, if the insured neglected to use all reasonable means to save the property, that would avoid the policy. Such was not true under the terms of the policy, as it provided for no forfeiture of the contract because of a failure to save some of the property. The effect of such neglect on the part of the insured would only have been to prevent a recovery of so much of the property as could have been saved by the use of reasonable means at their command. The language of the policies on that subject is as follows: "This company shall not be liable for loss caused * *   * by neglect of the insured to use all reasonable means to save and preserve the property at and after the fire." This language cannot be interpreted to mean that a negligent failure to use such means to save the property works a forfeiture of the entire policy. The instruction asked by appellants conveying that interpretation of the contract was therefore

erroneous, and was properly refused. Even if there had been evidence to support an instruction upon this phase of the case, appellants cannot, without asking an instruction in proper form, complain at the omission of the court to instruct on the subject.

Many other instructions were asked by the appellant, and refused by the court, but we think that the instructions given by the court correctly placed before the jury the law applicable to the case upon the issues raised by the pleadings and evidence.

Upon the whole, we find no error for which appellants can ask a reversal, and the judgment is therefore affirmed.