Leavon BEARDEN *v.* J.R. GROBMYER LUMBER CO. and Delsondro Sims

97-571                                          961 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered February 12, 1998

[Petition for rehearing denied March 19, 1998.*]

---

* BROWN, J., not particpating.

*J.R. Nash*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Jim Tilley* and *Julia L. Busfield*, for appellee J.R. Grobmyer Lumber Co.

DAVID NEWBERN, Justice. The main issue in this appeal is whether the Trial Court erred in refusing to allow the appellant, Leavon Bearden, to introduce inadmissible evidence to rebut other inadmissible evidence that was before the jury. We hold that the Trial Court did not err in that respect. We also conclude that it was not error to overrule Mr. Bearden's motion for a new trial. We affirm the judgment in favor of appellees J.R. Grobmyer Lumber Co. ("Grobmyer") and Delsondro Sims.

On a rainy day in September 1994, Leavon Bearden drove his pickup truck west on four-lane Roosevelt Road in Little Rock. Delsondro Sims, driving a large, unloaded truck owned by his employer, J.R. Grobmyer Lumber Co., was headed east on Roosevelt. As the truck driven by Mr. Sims approached a curve to the right, Mr. Sims braked and "geared down" due to the presence of a slower tractor-trailer ahead of him. He moved to the inside lane to pass the tractor-trailor. Mr. Bearden was on the inside lane going west.

As he was braking or gearing down, Mr. Sims felt a "twitch" in the truck he was driving, meaning that it slid somewhat to the left. He felt a collision and then looked in his rear-view mirror and could see Mr. Bearden's damaged truck crossing into the eastbound lane. Mr. Sims stopped, put out emergency signals, and called his employer.

Mr. Bearden's truck had struck, or had been struck by, the rear tire and bed of the truck being driven by Mr. Sims. Mr. Bearden was seriously injured, and his truck was damaged beyond repair. He sued Mr. Sims and Grobmyer, alleging that Mr. Sims

had been negligent in the operation of the Grobmyer truck, which was undamaged by the collision.

At the trial, counsel for Mr. Bearden called Mr. Sims as his first witness. Mr. Sims was asked if the Grobmyer truck had crossed the center line into Mr. Bearden's oncoming-traffic lane. He denied that it had. He was questioned about the somewhat equivocal testimony he had given in a deposition, but he continued to deny consistently that his vehicle had crossed the center line and insisted that he had never said it had done so. Then, during continued questioning of Mr. Sims by Mr. Bearden's counsel, the following occurred:

> Q: Well, where on your truck was the contact with Mr. Bearden's vehicle?
> A: We never established where the contact was. No one never established where it was at or anything. I mean, the police never, you know, gave a ticket or — they sent me on over to Georgia-Pacific.

Mr. Bearden's counsel neither objected nor asked that the statement about the ticket be stricken. Shortly thereafter he passed the witness to counsel for Mr. Sims and Grobmyer. During the ensuing cross-examination the following occurred:

> Q: Mr Sims, you stayed and the police officer investigated this accident?
> A: I guess they did.
> Q: Okay.
> A: I never got, you know, anything from it.
> Q: You said, in answer to Mr. Nash's question, no citations were given?
> A: No, no citations.
> Q: He's asked you —

At that point Mr. Bearden's counsel asked to approach the bench. He objected to the testimony concerning the officer's failure to issue a citation. Opposing counsel responded that the statement had been made initially in response to direct examination by Mr. Bearden's counsel. Mr. Bearden's counsel said he had not heard the earlier statement and that, in any event, it was not responsive to any question he had asked. The Trial Court offered

to admonish or instruct the jury to disregard the testimony, and Mr. Bearden's counsel said he would have to think about it.

Mr. Bearden's counsel did not seek an admonition or instruction on the point but ultimately asked that he be allowed to inquire of the officer who investigated the accident as to what caused the accident and whose fault he thought the accident was and to bring out a statement, apparently from the police report, that Mr. Sims was speeding when the accident occurred. The request was refused.

### 1. Curative admissibility

Evidence of a conviction or a bond forfeiture resulting from a violation of traffic laws is inadmissible in any civil action. Ark. Code Ann. § 27-50-804 (Repl. 1994); *Breitenberg v. Parker,* 237 Ark. 261, 372 S.W.2d 828 (1963). In *Girard v. Kuklinski,* 235 Ark. 337, 360 S.W.2d 115 (1962), it was explained that if the record of a conviction is inadmissible, there is even more reason to hold that evidence of a traffic citation, which is a "mere charge," is inadmissible. We have not dealt with the question of the admissibility of evidence that *no* ticket was issued, and we need not do so in this case, as both parties have proceeded on the assumption that Mr. Sims's remark about not having received a ticket was inadmissible.

Mr. Bearden's argument is that, as inadmissible evidence favoring the defense was before the jury, he should have been allowed to introduce rebuttal testimony from the investigating officer, which he concedes would have been otherwise inadmissible.

In *German-American Ins. Co. v. Brown,* 75 Ark. 251, 87 S.W. 135 (1905), we held that the introduction of incompetent evidence, over objection, allowed the opposing party to introduce equally incompetent rebuttal evidence. We wrote, "Where one party introduces incompetent testimony, he cannot complain of the action of the court in allowing the other party to introduce the same character of evidence directed to the same point at issue. He waives all objection to error which he thus invites." 75 Ark. at 257, 87 S.W. at 137. *Cf. Henson v. State,* 239 Ark. 727, 730, 393

S.W.2d 856, 859 (1960) ("[T]wo wrongs do not make a right"). Recently, in *Peters v. Pierce,* 308 Ark. 60, 823 S.W.2d 820 (1992), we held that a plaintiff should have been permitted to present otherwise inadmissible evidence of insurance coverage in response to a defendant's incompetent and inadmissible statement implying that he was "alone" in his defense and could not replace that which would be taken from him.

█  In the *Peters* case we cited, with approval, the following language from E.W. Cleary, *McCormick on Evidence,* § 57, at 147-148 (3d ed. 1984):

> If the evidence, though inadmissible, is relevant to the issues and hence probably damaging to the adversary's case, or though irrelevant is prejudice-arousing to a material degree, *and if the adversary has seasonably objected or moved to strike,* then the adversary should be entitled to give answering evidence as of right. By objecting, he has done his best to save the court from mistake, but his remedy by assigning error to the ruling is not an adequate one. He needs a fair opportunity to win his case at the trial by refuting the damaging evidence . . . . [Footnotes omitted.]

*Peters v. Pierce,* 308 Ark. at 64, 823 S.W.2d at 822 (emphasis supplied.)

Here, not only was there neither an objection nor a motion to strike at the time of the objectionable testimony, but the statement in question came during direct examination in Mr. Bearden's case-in-chief. If, indeed, the statement concerning the failure to issue a traffic ticket was inadmissible, as the parties assume, the question of curative admissibility might have been averted by an objection sustained by the Trial Court. Certainly the later reference to it by counsel for Mr. Sims and Grobmyer, to which Mr. Bearden's counsel did object, could have been prevented.

The objection presumably and properly would have been that Mr. Sims's statement about the failure to issue a traffic ticket was, as Mr. Bearden's counsel later argued to the Trial Court and argues in this appeal, not responsive to the question he had asked.

█  We might have been required to deal with curative admissibilty even if the Trial Court had sustained a timely objec-

tion and had stricken the evidence and admonished the jury to disregard it if it was so devastating to Mr. Bearden's case that striking the testimony and admonishing the jury would not have cured the problem. That was one of the bases of our decision in the *Peters* case. We do not reach that question here, of course, as there was no timely objection or motion to strike, and Mr. Bearden did not accept the Trial Court's offer to admonish or instruct the jury to disregard the officer's testimony.

### 2. New trial

#### a. Miscarriage of justice

Motions for new trial are governed by Ark. R. Civ. P. 59, which provides in part as follows:

> (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; . . . (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to law; . . . .

In his motion for a new trial, Mr. Bearden contended that the verdict in favor of Mr. Sims and Grobmyer constituted a "miscarriage of justice" in view of the failure to allow him to introduce the evidence discussed above. In support of that position on appeal, Mr. Bearden cites *Young v. Honeycutt,* 324 Ark. 120, 919 S.W.2d 216 (1996), a case in which we reviewed a decision granting a new trial. Our concern in the *Young* case was not with whether there had been a miscarriage of justice in the abstract. Rather, our concern was with whether the Trial Court had erred in holding that the verdict was contrary to the preponderance of the evidence. In support of the use of the phrase "miscarriage of justice" in the *Young* case, we cited *Brant v. Sorrells,* 293 Ark. 276, 737 S.W.2d 450 (1987), an earlier decision in which we had used that same phrase.

The *Brant* decision was also one in which the Trial Court had granted a motion for a new trial on the basis that the jury verdict was clearly against the preponderance of the evidence. We

affirmed on the basis that the Trial Court had not abused his discretion in granting the motion for new trial.

■ Mr. Bearden's argument on appeal to the effect that there was a miscarriage of justice in this case refers only to the argument, dealt with above, that he should have been allowed to introduce the otherwise inadmissible rebuttal evidence. No authority is cited from which we can deduce an abuse of discretion in this case. Most of the argument in favor of a new trial has to do with the issue faced in the *Young* and *Brant* decisions, *i.e.,* whether the jury verdict was clearly against the preponderance of the evidence.

### b.   Clear preponderance

■ Mr. Bearden recognizes that, when a trial court' has refused to grant a new trial in response to an argument that the verdict is clearly against the preponderance of the evidence, the test on appeal is whether there is any evidence to support the jury's verdict.

> When a motion for a new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, Ark. R. Civ. P. 59(a)(6), we affirm if the verdict is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences permissible in accordance with the proof.

*Patterson v. Odell,* 322 Ark. 394, 401, 909 S.W.2d 648, 652 (1995). "It is within the province of the jury to believe or disbelieve the testimony of any witness." *Id.* at 402, 909 S.W.2d at 652.

■ Given the fact that the only evidence as to what happened to cause the accident was Mr. Sims's version of the facts, we cannot say that the verdict in favor of Mr. Sims and Grobmyer was clearly against the preponderance of the evidence.

Affirmed.

BROWN, J., not participating.