SHEARER *v.* MORGAN

5-3837                                              401 S. W. 2d 21

Opinion delivered April 4, 1966

*Williams & Gardner,* for appellant.

*Gordon & Gordon, Gannaway & Darrow,* for appellee.

OSRO COBB, Justice. This case involves two closely related motor vehicle collisions which occurred on January 3, 1965, at a point near the west end of Point Remove Creek Bridge on Highway 64, some two miles west

of Morrilton. The collisions occurred after it had become dusky dark, with traffic in both directions using headlights.

Appellee Emmitt Brown was driving his passenger car east. He testified that the car immediately in front of him (driver unidentified) braked and fish-tailed to the right side to the road, and that he reacted by applying his brakes to keep from hitting said car. The car in front of Brown, however, swerved back to the left and continued on east. Brown had not regained his speed when he was struck from the rear by a car driven by appellee Larry E. Woods. Both cars were slightly damaged but were not rendered inoperable. Brown and Woods got out of their vehicles and decided to leave the two cars, which admittedly blocked the entire eastbound lane of traffic, until the police could arrive and investigate.

Shortly after the collision involving Brown and Woods, the truck of appellant, Melton Truck Lines, Inc., driven by Dan Shearer, also an appellant, carrying a load of approximately 66,000 pounds, approached the bridge driving west. In the meantime appellee Brown had walked across the bridge, some 200 feet, and was waving a white handkerchief to warn westbound traffic. Appellant Shearer, driver of appellant's truck, either did not see Mr. Brown waving the handkerchief, if he was doing so, or if he did see him waving the handkerchief, failed to heed the warning and slow down.

Highway 64 is one of the main arteries of traffic in Arkansas, and a line of eastbound traffic rapidly built up behind the Brown and Woods cars. Some such cars swung out around the two parked cars and proceeded on east. Appellees Bill Ed Morgan and his wife, Shirley Morgan, were in their car and proceeding east and were likewise attempting to go around the two vehicles blocking their lane of traffic. A head-on collision with appellant's truck occurred in the west lane of traffic, re-

sulting in personal injuries and property damages to the Morgans.

The Morgans, appellees, brought suit against the Melton Truck Lines, Inc., Dan Shearer, the driver of the truck, and against Emmitt Brown and Larry E. Woods, alleging that all of said parties were guilty of negligent acts, proximately causing or contributing to their injuries and damages.

At the conclusion of all of the evidence, the trial court, over the objections of appellants and appellees Bill Ed Morgan and Shirley Morgan, directed a verdict in favor of appellees Brown and Woods. The jury thereafter returned verdicts against appellants Shearer and Melton Truck Lines, Inc., and judgments were entered thereon.

Appellants are here on appeal urging five points for reversal of the judgment entered against them:

(1)   That the court erred in directing a verdict for defendants Brown and Woods.

(2)   That the court erred in giving an instruction on punitive damages and in submitting a form of verdict on punitive damages.

(3)   That the court erred in refusing to submit the the case to the jury on special interrogatories.

(4)   That there was no substantial evidence offered to support a verdict for appellee Bill Ed Morgan.

(5)   That the verdicts rendered were excessive.

*Point* 1—The directed verdict for appellees Emmitt Brown and Larry E. Woods.

It is the long-established rule of this court that, in determining the correctness of the trial court's action

in directing a verdict for either party, we must take that view of the evidence which is most favorable to the party against whom the verdict is directed; and, if there is any substantial evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error for the court to take the case from the jury. *Smith* v. *McEachin,* 186 Ark. 1132, 57 S. W. 2d 1043 (1933). *Barrentine* v. *Henry Wrape Co.,* 120 Ark. 206, 179 S. W. 328 (1915). In the *Smith* case, *supra,* we said,

"*** In testing whether or not there is any substantial evidence in a given case; the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict."

In *Huffman Wholesale Supply Co.* v. *Terry,* 240 Ark. 399 (March 7, 1966), we reaffirmed our position with reference to appellate review of directed verdicts.

Ark. Stat. Ann. § 75-647 (Supp. 1965) provides as follows:

"Stopping, standing or parking outside of business or residence district.—(a) *Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop,* park, or so leave such vehicle off such part of said highway, but in every event an *unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles* and a clear view of such stopped vehicles shall be available from a distance of 200 feet in each direction upon such highway. (b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or main trav-

620

eled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.'' (Italics ours.)

*Appellee Woods testified:*

"Q. Was your car in driving condition after you ran into the back of Mr. Brown's car?

A. Yes.

Q. Could you have driven it on without any trouble?

A. I could have driven it.

Q. Could you have backed it up onto the shoulder of the road just west of the bridge?

A. I could have.

Q. Could you have driven it forward across the bridge and parked it on the shoulder on the other side of the bridge?

A. Yes.

Q. Could Mr. Brown have done either one of those things?

A. Yes.

Q. You could have driven them on up to Morrilton, could you not?

A. Yes."

*Appellee Brown testified:*

"Q. Was there any reason after Woods had hit you that you couldn't have moved your car?

A. No, Sir.

Q. You did drive it on to Pine Bluff that night, did you not?

A. Yes, sir, I did.

Q. And without having any repairs done to it at all?

A. Yes, sir.

Q. It was drivable at the moment?

A. Yes, sir."

There is no question that multiple factors were involved in causing or contributing to the second collision. The precise question before us as to the directed verdicts in this case is whether the actions of appellees Brown and Woods, in leaving their cars in a position to totally block the east-bound traffic, were such actions upon which reasonable-minded men might reach the conclusion from all of the evidence in the case that Brown and Woods were guilty of negligence which proximately caused or contributed to the cause of the second collision.

Brown and Woods both admitted that they could have moved their vehicles without difficulty and it is clear that, had they done so, freeing both lanes of traffic, there would have been no reason for Morgan to be cutting his car to the left lane where the head-on collision occurred with appellant's truck. Of course, had Morgan not turned into the left lane, appellant's truck could have passed without the collision; and, had appellant's driver observed and obeyed the handkerchief warning alleged to have been given by Brown, the truck might have been slowed down in time to permit Morgan to pass the parked vehicles and regain his proper lane of traffic before the truck reached him. It appears to us that any tenable theory as to the cause or causes of the second collision must be directly related to the blocking of the east-bound traffic lane by the vehicles of

Woods and Brown as a necessary and vital link in the chain of events resulting in said second collision. Furthermore appellee Brown obviously realized that the leaving of the cars blocking the east-bound lane of traffic created a serious traffic hazard—otherwise he would not have gone to the east end of the bridge to wave a handkerchief to warn such traffic.

We have reached the conclusion that the acts of appellees Brown and Woods, in deliberately leaving their vehicles in such a position as to block the entire east lane of traffic on this main artery highway at dusky dark, upon a bridge and in violation of a statutory duty to remove same, had a definite and indispensable part in the occurrence of the second collision, and that reasonable-minded men might conclude from the acts of Brown and Woods that same constituted actionable negligence, proximately causing or contributing to the cause of the second collision, and that a fact question was made as to their negligence, if any, for determination by the jury. The directed verdicts denied the Morgans this right, and we have concluded that the whole case must be retried.[1]

*Point 2*—The instruction given by the court on punitive damages.

Since we are reversing this case for a complete new trial, we only briefly discuss the other points raised on this appeal. There was no evidence offered in the case to indicate malice, wilfulness, or wanton disregard of the rights and safety of others by any of the parties involved in the two related collisions, and the giving of the instruction on punitive damages was highly improper. *Texarkana Gas and Light Co. v. Orr,* 59 Ark. 215,

[1]Wheaton Van Lines, Inc. v. Williams, 240 Ark. 280 (Feb. 14, 1966), is a joint tort-feasor action involving many of the factual aspects of the instant case. Said case may be of assistance in the retrial of this case as to instructions, verdicts, and contributions by the joint tort-feasors against whom verdicts may be entered. See *A.M.I.* 2111 (1965).

See also Hill v. Wilson, 216 Ark. 179, 224 S. W. 2d 797 (1949).

27 S. W. 66 (1894). See cases cited under *A.M.I.* 2217 (1965).

*Point 3*—The denial of special interrogatories.

We have consistently held that the question of submitting special interroatories to a jury is within the sound discretion of the trial court. *Missouri Pacific Transportation Co.* v. *Parker,* 200 Ark. 620, 140 S. W. 2d 997 (1940). We find no error on the part of the trial court in refusing to submit special interrogatories requested in this case.

*Point*s 4 *and 5*—

Since the case is to be completely retried, we find no necessity to discuss evidence in support of the verdicts rendered or to discuss the claim that the verdicts are excessive.

The judgment of the lower court is reversed and cause is remanded for a new trial.