SHIRLEY COWART, ADM'X *v.* CASEY JONES, CONTRACTOR, INC.

5-5549                                    467 S. W. 2d 710

Opinion delivered June 7, 1971

*Carl Langston* and *Gene Worsham,* for appellant.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellee.

FRANK HOLT, Justice. The appellant brought this action against the appellee to recover damages for the death of Gerald Cowart, appellant's husband, allegedly caused by the negligence of the appellee. The deceased

was fatally injured when a crane, rented from appellee, struck the decedent and caused him to fall from a building under construction. When the appellant concluded the evidence in her case, the trial court directed a verdict for the appellee on the basis that the continued use of the crane by Bechtel (decedent's employer), with the knowledge that it lacked certain safety devices, constituted a separate and intervening cause.

For reversal of the judgment appellant contends that the trial court erred in directing a verdict for the appellee, the lessor, because the crane was a dangerous instrumentality without the necessary safety devices and that the appellee, lessor, being a bailor for hire, owed a duty to furnish a safe appliance to those expected to use it and, further, that the appellee, lessor, is not relieved of liability even though the decedent's employer was also negligent in continuing to use the dangerous instrumentality after detecting the dangerous condition.

The decedent, an iron worker, was part of a "raising gang" employed by Bechtel Corporation at a construction of facilities for Union Carbide Corporation. On the date of the accident, he and his crew were transferred by his superior to a "preheater building" from an adjoining building where they had been erecting steel with the use of a small crane. The decedent and his co-workers had not previously used the particular crane which was at the "preheater" site. This was a large, heavy-duty crane with a load capacity of 100 tons and a 170-foot boom. Decedent's employer had two large cranes of this type, as well as smaller ones, on the job site. This large type crane was necessary at the "preheater" site because of the weight of the steel and the height required to set it in place. The fatal accident happened when the first steel column was raised by the crane and placed at the top of the "preheater" building. After decedent had unhooked his "choker" from the steel column, his co-worker had difficulty in disconnecting his side of the "choker." Decedent assisted his co-worker and when the "choker" was released, the "headache ball," a steel ball weighing approximately fifty

pounds and approximately fourteen inches in diameter, began spinning at a rapid rate with great force, knocking decedent from his position on top of the building and causing him to fall seventy-five feet to his death.

This crane, designed and customarily used for steel construction work at high elevations, was not equipped nor supplied with a non-spin swivel or a non-spin cable. Following the accident, a safety consultant for the Arkansas Labor Department investigated and testified that: "It didn't have a swivel on it which would have prevented this (the accident)." He recommended "a nonrotating cable which tends to not twist up or swivel on this cable and they were putting that on there when I left." According to him, the use of the swivel is "standard knowledge or standard procedure, it goes on there to prevent the cable from getting twisted up."

The decedent's co-worker testified that it is standard procedure that cranes of this type engaged in "hanging iron" be equipped both with a non-spin swivel and non-rotating cable. This witness denied any knowledge before the accident that the crane was not equipped with these two safety devices. According to him, this crane was very dangerous without this equipment. The decedent's foreman testified that: "A swivel headache ball is standard equipment" and the swivel is an absolute necessity. Further, there was no tag line on the steel column being set. Another witness, an iron worker for 21 years, stated that in the absence of these devices this large crane, a utility rig used for heavy equipment such as "hanging iron," was certainly "unsafe."

The construction superintendent testified that this crane was multi-purpose in its nature and was used primarily for "setting structural steel" and "hanging iron;" that it was equipped with a long boom "to reach high places" in steel erection jobs; that the crane, rented from appellee, had been received from the appellee three to four weeks before the accident; that he and the particular crew which assembled this crane after its receipt were aware that it was not equipped with these safety

devices. According to him, appellee was contacted about the lack of these safety features. He testified that he had used this and other cranes without the safety features and that this crane had not been used to set heavy iron, although it had been used every day to set "little stuff." He testified that he had set the rig "in operation" knowing that it was not safety equipped and the foreman on the job knew the crane was not so equipped. Further, he stated that customarily a "tag line" was used to take the slack out of the line when the crane was not equipped with a swivel.

Appellant correctly states the rules of law which apply in determining whether a directed verdict is correct. In *Shearer* v. *Morgan*, 240 Ark. 616, 401 S. W. 2d 21 (1966) we said:

"It is the long-established rule of this court that, in determining the correctness of the trial court's action in directing a verdict for either party, we must take that view of the evidence which is most favorable to the party against whom the verdict is directed; and, if there is any substantial evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error for the court to take the case from the jury." [citing cases]

Also, in *Harkrider* v. *Cox*, 230 Ark. 155, 321 S. W. 2d 226 (1959) we said:

"The rule is well established that where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury."

Even though we hold, which we do not, as contended by appellant, that the crane was an inherently dangerous instrumentality and that the appellee was negligent in furnishing or supplying decedent's employer with unsafe equipment, the appellant cannot prevail. This is true because, in directing a verdict for appellee, the court was correct in stating:

"The most important and persuasive reason why this court is directing a verdict for the defendant Casey Jones is that there can be no question, I rule as a matter of law that representatives in high capacity in Bechtel Corporation admittedly knew that this crane was received from whatever source without the safety devices. That they used it for a period of time.- * * * But in any event, charged with that knowledge, in my opinion the law is clear that there was a very definite intervening cause that we cannot attribute to Casey Jones."

In *Collier* v. *Citizens Coach Co.*, 231 Ark. 489, 330 S. W. 2d 74 (1959) we defined proximate cause as being:

"That which is a natural and continuous sequence, unbroken by any efficient intervening cause,- produces the injury, and without which the result would not have occurred."

See, also, *Hartsock* v. *Forsgren, Inc.*, 236 Ark. 167, 365 S. W. 2d 117 (1963); *Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576, 113 S. W. 647 (1908); AMI 503.

In the case at bar it is undisputed that the crane had been on the job site and out of the appellee lessor's control for at least three to four weeks; that the crane was assembled on the job -site and operated by the decedent's employer, during which time the appellee exercised no control over the crane's operation. Further, that decedent's employer was aware during this three to four weeks of use that the two safety devices were not on this crane; that, knowing this, decedent's employer directed him to work with or about this crane in the lifting of heavy structural steel which, according to the record, is the only time during the three to four weeks it had been so used; and that decedent's employer admitted that it was customary, in the absence of these safety devices, to take "the back lay out of the cable" before it is sent up. In the circumstances we are of the view that the acts of decedent's employer constituted an efficient, independent, and intervening proximate cause

which superseded or broke the causal connection of the negligence, if any, of appellee.

Affirmed.

BYRD, J., concurs.