HERGETH, INC. *v.* Jeff GREEN, et al.

87-33                                          733 S.W.2d 409

Supreme Court of Arkansas
Opinion delivered July 20, 1987

*Wright, Lindsey & Jennings*, for appellant.

*James F. Swindoll, P.A.*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from a jury verdict and judgment which awarded the appellee damages in the amount of $400,000 for the loss of his left hand as a result of an on-the-job injury. The verdict was in general form. On appeal the appellant contends: (1) that it owed no duty to warn under the circumstances of this case; (2) that the failure to warn was not the proximate cause of the injury; (3) that there was no substantial evidence to warrant the instruction on supplying a defective product; and (4) that the evidence was insufficient to support the instruction on loss of ability to earn.

Chicopee Manufacturing Company purchased a flock-feeder machine from appellant (Hergeth, Inc.) to be used in its production of a non-woven fabric. This was the fourth or fifth flock-feeder unit purchased by Chicopee from the appellant. One of the conditions of the purchase contract was that appellant

would supply a person, known as an "erector," to oversee the installation and start-up of the system. The main element in a flock-feeder unit is a beater. The beater is a drum-like instrument with sharp nail-like teeth on its surface. While in operation the beater turns at about 900 RPM. In order to have the system operational, it was necessary to construct a transition duct from the beater to a fan which pulled fiber from the beater to the reserve box, where it was processed into the finished product. The appellant did not manufacture or supply the transition duct because there was not a standard distance from the beater to the reserve box. It was understood between appellant and Chicopee that this duct system would be constructed on site. A sample drawing of a transition duct was supplied by Hergeth, designed in detail by Chicopee and manufactured by a local sheet metal company which is not a party in this suit. Hergeth knew that this transition duct was essential for the system to become operational. Either Jack League or another of Hergeth's erectors was present at all times until the machine was placed into operation and turned over to Chicopee. It was a part of League's responsibilities to see that the unit was placed into operation. Chicopee had no obligation to pay for the flock-feeder unit until it was functional.

A four inch access window was installed over the beater, in the duct leading to the reserve box, to facilitate the removal of hanging pieces of fiber (hangers) from the transition system. Chicopee provided cardboard tubes for removing the hangers from the duct through the window. Such process allowed the beater to remain in operation while the hangers were removed. There is considerable evidence in the record that employees of Chicopee and Hergeth knew that the plexiglass window installed in the transition system presented a danger to one who might insert his hand through the window. However, neither appellant nor Chicopee placed a warning sign near the plexiglass clean-out window.

The appellee opened the plexiglass window and inserted his hand into the duct work to remove hangers. In doing so he placed his left hand against the rotating beater and it was amputated. The appellee filed a products liability action against Hergeth on the theories of strict liability, negligence, and breach of warranty.

## DUTY TO WARN

The first argument presented by appellant is that there was no duty to warn on the part of the manufacturer since the danger in this case was "open and obvious." Appellant also argues that there was no duty because the purchaser was sophisticated and had actual knowledge of the dangerous propensity of the product. The basic argument is that appellant did not design, manufacture, supply, or install the transition duct in which the access window was located. Testimony and evidence is abundant that both Chicopee and the appellant were aware that the transition duct system would be designed and manufactured locally. It is also clear that Hergeth and Chicopee cooperated throughout the placement and start-up of this machine. Testimony is disputed as to whether appellant knew that this access window created a dangerous condition.

The question to be considered at this point is whether the appellant had a duty to warn under the conditions existing at the time of this occurrence. The key to this question is whether the condition was "open and obvious." We have considered this issue in a number of other cases. A closely related question was considered by this Court in *Forrest City Machine Works* v. *Aderhold*, 273 Ark. 33, 616 S.W.2d 720 (1981). In that case we stated: "Manufacturers in Arkansas are not and should not be relieved of the duty to exercise due care in the design and manufacture of equipment merely because the dangerous feature is clearly exposed to those foreseeably using the machine." The first argument for appeal in the *Aderhold* case was that the manufacturer had no duty to warn of the hazard. Although we were dealing with the duty to guard, we did state that there is no duty on the part of the manufacturer to warn of a danger when the defect is open and obvious. We held that the open and obvious rule would not serve as a defense, as a matter of law, to all bases of liability.

In *Larson Machine* v. *Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980), we considered the question of whether the hazard was "open and obvious." In *Larson* the plaintiff's leg became entangled in a power take-off unit on a farm tractor. The power take-off shaft originally had a shield over it, but it had been removed by the farm equipment dealer before the accident. The exposed shaft

and gears were located immediately next to the driver's seat. The testimony was in dispute as to whether the hazardous condition was open and obvious. Wallace claimed the exposed power take-off was not open and obvious. The dealer testified that it was. We upheld a jury verdict against the dealer. However, we held that an independent intervening cause precluded liability on the part of the manufacturer. In *Larson* the dealer handling the farm tractor had modified the power take-off shield, thereby creating a danger which did not exist at the time it left the control of the manufacturer.

We considered the same argument presented here in *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). In *Bashlin* the claim was founded upon products liability, negligence, and breach of warranty. In *Bashlin* we stated: "The jury may have found that Bashlin was negligent in failing to warn the plaintiff on the use of the belt, in failing to warn about double D-ringing, or that the manufacturer became aware that the belt tongue should not have been constructed of leather alone and should therefore have recalled the product. . . . The plaintiff need not bear the burden of proving both theories of liability, it is enough that he prove either."

In the present case the jury was instructed in accordance with AMI 1002 which states:

> A manufacturer of a flock-feeder assembly has a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in its use for a purpose and in a manner which the manufacturer should reasonably foresee. A violation of this duty is negligence. There is no duty, however, to warn a user of obvious dangers or those known to him or those which he should reasonably discover for himself.

There was no warning sign affixed to the machinery in question. The evidence is disputed as to whether the danger was open and obvious. Testimony was offered that both Hergeth and Chicopee knew of the dangerous condition. On the other hand, testimony was presented which was to the effect that neither of them knew of the dangerous condition.

The flock-feeder in this case was clearly being used

for the purpose and in the manner which the manufacturer could reasonably have foreseen. The appellant had a duty to warn of inherent dangers or dangers which were reasonably foreseeable. Failure to do so is negligence. The jury was told that this duty to warn did not exist if the danger was apparent or known to the injured party. The verdict returned by the jury is not inconsistent with this instruction. The jury could have found that the danger was not open and obvious and that it was inherent or reasonably foreseeable.

The record in this case clearly presents an issue of fact. We cannot say as a matter of law that the danger presented in this case was open and obvious. Therefore, the trial court did not err in refusing to instruct the jury that as a matter of law the appellant did not have a duty to warn.

## PROXIMATE CAUSE

The appellant's second argument is that if there was a duty to warn and if the appellant failed to warn, then nevertheless the case should be reversed because any negligence on its part was not the proximate cause of the injury. The appellant suggests that the proximate cause was either Chicopee's design of the access window, Chicopee's failure to warn of the inherent dangers, or the appellee's refusal to heed Chicopee's warnings. We have discussed similar questions in a number of cases. In *Larson Machine* v. *Wallace*, supra, we stated: "The question of intervening efficient cause is simply a question whether the original act of negligence or an independent intervening cause is the proximate cause of the injury." We further stated: "Like any other question of proximate causation, the question whether an act or condition is an intervening or concurrent cause is usually a question for the jury." In the case of *W.M. Bashlin Co.* v. *Smith*, supra, we held that negligence of a third party is not a defense unless it is the sole proximate cause of the injury sustained and that a plaintiff may recover from the original actor is the negligence of such defendant was a continuing factor.

We also found that there was an intervening independent cause which precluded liability on the part of the supplier in the case of *Cowart* v. *Casey Jones Construction Company, Inc.*, 250 Ark. 881, 467 S.W.2d 710 (1971). In *Cowart* the facts were that the employer of the injured party continued to use a rented crane

which he knew lacked certain safety devices. This potential hazard was brought to the attention of the employer when it was delivered. In upholding the trial judge's directed verdict against the injured party in favor of the supplier, we found that the danger was noticeable and obvious. We further stated that the continued use of the machine by the employer with full knowledge of its dangerous aspect amounted to an independent intervening cause.

Being unable to state that as a matter of law the defect was open and obvious, we are left with proximate causation being a question for the jury. Further, the facts are sufficient to sustain a finding by the jury that there was proximate causation between the failure to warn and the resulting injury.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT AN INSTRUCTION ON SUPPLYING A DEFECTIVE PRODUCT

The third argument by appellant is that there was no substantial evidence to support a finding that appellant had supplied a product in a defective condition. The appellant's primary argument on this point is that the court gave an erroneous instruction, which it argues is presumed to be prejudicial error. Arkansas has enacted a Products Liability Act, and the definitions of words and phrases used in the Act are set out in Ark. Stat. Ann. § 34-2802 (Supp. 1985). The statute describes a "manufacturer" as being the designer, fabricator, producer, compounder, processor, or assembler of any product or its component parts. "Defective condition" is defined as meaning a condition of a product that renders it unsafe for reasonably foreseeable use and consumption. "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer or user who acquires or uses such product, assuming the ordinary knowledge of the community, of similar buyers, users or consumers, as to its characteristics, propensities, risks, dangers and proper and improper uses, as well as any special knowledge, training or experience possessed by the particular buyer, user or consumer or which he or she was required to possess. A "products liability action" is an action for personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service,

warning, instruction, marketing, packaging or labeling of any product. We do not find that the trial court gave an erroneous instruction in this case. To the contrary, we hold that the instruction given was a proper one under the facts presented to the jury. The products liability statute clearly contemplates that a manufacturer may be responsible for injuries resulting from defective manufacture as well as injuries arising out of the erection and assembly of the product.

## LOSS OF ABILITY TO EARN

The injured party in this case was a twenty-six year old male with some college training. He expressed a desire to become a veterinarian. Professor Weber testified that the prosthesis used by the appellee limited his flexibility, dexterity, and sensation. It is not necessary to use an expert to reach these conclusions under the facts of this case. The appellee appeared before the jury in the obvious physical condition of having lost his left hand. He further informed the jury that his left hand had been dominant.

The loss of future wages and the loss of ability to earn are two separate and distinct elements of damages. In the case of *Cates* v. *Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983), we distinguished the two. As stated in *Cates*, capacity to earn is covered by AMI 2207 and is distinct and separate from the element of permanency or loss of future wages. For a more thorough discussion and comparison of these elements of damages see *Cates*. When a person has suffered the loss of a part of his body, such as a hand, it is not necessary to prove with specificity the details as would be required to support an instruction for the loss of future wages. Therefore, the instruction as to decreased earning capacity was proper under the circumstances of this case.

Having carefully considered the record and each argument presented on appeal, we do not find reversible error. Therefore, the case must be affirmed.

HICKMAN and NEWBERN, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I dissent because the appellant did not manufacture nor supply the machine that took the hand of Jeff Green.

This case is typical of products liability cases, and in some

respects demonstrates what is wrong with our legal system in the way it has come to treat torts.

First, the employer, Chicopee Manufacturing Company, built this machine, and if anyone or any entity should be blamed for negligent design, or failure to warn, it is Chicopee. Of course, Chicopee has workers compensation insurance and cannot be sued. The appellee, Jeff Green, has presumably collected his compensation. It will not, I am sure, compensate him for his loss, but it is not insignificant either.

Then there is the carelessness of Jeff Green. Frankly, he should have known not to stick his hand in the machine. Common sense tells us all that that is dangerous. But, tragically, these accidents do happen regardless of the care and good intentions of employers, supervisors and employees.

Why this particular lawsuit? For money. If only a slight case can be made against someone or some company remotely connected with the accident perhaps a jury will make an award. The jury, of course, is not told the truth. They are not told Chicopee has workers compensation or Green has made a recovery. We are going to have to begin telling juries the truth if we intend to reform tort law. The simple fact is that we do not trust juries with the truth. Insurance companies fear that juries will make excessive awards if they know a defendant has insurance. Plaintiffs' lawyers fear juries will reduce their awards if they know their clients are already compensated. So we keep from the jury the truth and have lawsuits like this: a defendant with a deep pocket is sued in hopes of more money.

The law, of course, can be stretched to bring such defendants into the realm of liability. Usually the theory is a failure to warn—that is the handiest charge of negligence.

Even hammers, axes and ladders have warnings on them, warning users to be careful. These warnings are put there because manufacturers have been sued because someone was dumb enough (and there is no other way to say it) to hurt themselves through carelessness. Carelessness causes many accidents, and all the signs in the world will not change that fact.

I regret joining the decision in *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). A safety belt over 11 years

old, failed while being improperly used, and we affirmed an outlandish verdict. It is such decisions as this which are, in a large part, destroying our ability to produce products in this country, and at the bottom of it all is simple greed.

There is tragedy in the lives of those harmed, but our system has adequate legal remedies for most wrongs. The quest for larger and larger verdicts is simply founded on greed. Why not tell juries the truth? Why not tell juries exactly how much the lawyers will get? Could we have any worse system?

NEWBERN, J., joins in this dissent.