# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1849

_____

Triston James Rhodes

*Plaintiff - Appellant*

v.

Fulton Thermal Corp.

*Defendant - Appellee*

_____

No. 25-1881

_____

Triston James Rhodes

*Plaintiff - Appellee*

v.

Fulton Thermal Corp.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: April 16, 2026
Filed: June 12, 2026

_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

Triston J. Rhodes was injured while inspecting a "thermal fluid heater" (a boiler) manufactured and inspected by Fulton Thermal Corp. Alleging defects in design, manufacturing, and marketing, he sued Fulton for negligence and strict products liability. The district court[1] granted summary judgment to Fulton. Rhodes appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.


I.


Rhodes worked at a Tyson Foods plant in Nashville, Arkansas. On July 9, he and his supervisor, Jeremy Hamner, began a monthly inspection of a boiler, which Fulton had manufactured 21 years before.

Checking the low gas-pressure switch on the boiler, Hamner turned off the natural-gas supply and restarted the boiler. Rhodes watched close by. Testing the high gas-pressure switch, Rhodes and Hamner saw a "cloud of white stuff" and heard a "mechanical sound." The boiler exploded. Both men suffered severe burns.

Three weeks later, Fulton and Tyson inspected the fire scene but did not test the boiler. It was removed within three weeks after the accident. Rhodes was not notified of the inspection or the removal.

The boiler supplied natural gas to a burner on it. The burner sent fire down into the center of the boiler. The burner heated circular coils of tubing and the thermal fluid ("paratherm") within them. After reaching 550 degrees, the paratherm

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

left the boiler and was pumped from the boiler through the plant to cookers, which fried pieces of chicken.

Fulton employees inspected the boiler quarterly—including three days before the explosion. These inspections tested the pumping system, pressure gauges, and safety components; reviewed prior inspection reports; and checked for smoke emissions from the boiler.

In addition to the quarterly inspections, Fulton inspected the boiler annually for two days. The latest annual inspection, three months before the explosion, included a physical examination of the internal components. Entering the boiler, Fulton employees visually inspected about 25 percent of the interior coils, checking for signs of paratherm leakage. None of Fulton's inspections reported issues.

During discovery, Rhodes's expert, David Caggiano, testified that the annual inspection should have included radiographic testing.[2] He theorized that paratherm leaking from the boiler's coils ignited when Hamner restarted the boiler, causing the explosion. He stated that a malfunction in the internal coils occurred "pretty soon before the fire," and likely left physical evidence of a paratherm leak. He acknowledged there were "dozens" of possible ignition sources outside the boiler but concluded that his theory "matches the fact pattern best." Asked about coil malfunction, he said that coil perforation could have been caused by "thermal expansion and contraction," "weld failure," or "anything, really." Asked about a manufacturing defect, he stated: "I'm not saying there's a manufacturing defect, though." Asked if the boiler had a design defect, he answered "No."

Justin Harrington, a Fulton service technician, testified that during his 18 years of inspecting boilers, he witnessed (only) one coil perforation, at a different

---

[2]Explained as "a non-destructive testing method using x-ray technology to identify flaws such as cracks, inclusions and other irregularities within metal components."

plant. He concluded that the malfunction was caused by an improper balance of the system, which led to "a bunch of smoke coming out of our stack."

Granting summary judgment, the district court found no evidence that Fulton breached a duty, supplied a defective boiler, or proximately caused Rhodes's injuries. He appeals.

## II.

Rhodes argues the district court erred by granting summary judgment due to genuine disputes of material fact whether Fulton supplied a defective boiler and negligently inspected and serviced it. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)(2)**. "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011), *citing* **Celotex Corp. v. Catrett**, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986), *citing* **Fed. R. Civ. P. 56(e)**. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587. (internal quotation marks omitted).

A.

To recover under a theory of strict products liability, a plaintiff must prove: (1) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing a product; (2) it was supplied by him in a defective condition which rendered it unreasonably dangerous; and (3) the defective condition was a proximate cause of the harm to person or property. *See S. Co. v. Graham*, 607 S.W.2d 677, 679 (Ark. 1980); **Ark. Code Ann. § 16-116-101(a)** (same).

"It is not necessary to establish these elements by direct proof; circumstantial evidence will suffice." *Yielding v. Chrysler Motor Co.*, 783 S.W.2d 353, 355 (Ark. 1990). Without direct proof, a plaintiff must offer substantial evidence that "negates other possible causes of failure of the product, not attributable to the defendant, and thus creates a reasonable inference that the defendant is responsible for the defect." *Higgins v. Gen. Motors Corp.*, 699 S.W.2d 741, 743 (Ark. 1985). "Substantial evidence must be of sufficient force and character to compel a conclusion one way or another; it must force or induce the mind to pass beyond suspicion or conjecture." *Yielding*, 783 S.W.2d at 355. "Conjecture and speculation, however plausible, cannot be permitted to supply the place of proof." *Glidewell v. Arkhola Sand & Gravel Co.*, 208 S.W.2d 4, 8 (Ark. 1948).

Rhodes argues that, absent a defect, the boiler would not have exploded. *See Crawford v. Sears Roebuck & Co.*, 295 F.3d 884, 886 (8th Cir. 2002) ("[W]hen common experience teaches that an accident would not have happened in the absence of a defect, a case may sometimes be allowed to proceed to a factfinder.") (internal quotation marks omitted); *Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 744 (Ark. 1994), *citing Williams v. Smart Chevrolet Co.*, 730 S.W.2d 479 (Ark. 1987) (explaining that the mere occurrence of an accident does not establish a product defect, but that additional facts tending to show the defect existed before the accident may establish a sufficient case). Rhodes believes that Caggiano and Harrington negate alternative causes of the accident and that, as supported by eyewitness testimony, a defect caused the explosion.

Rhodes's argument fails. His expert Caggiano acknowledged that "dozens" of ignition sources existed outside the boiler; conceded he did not know how the coils malfunctioned; and could not identify a manufacturing or a design defect. His testimony does not sufficiently negate other possible causes of failure and thus create a reasonable inference of a defect.[3] *See **Bohannon v. Walmart Stores, Inc.***, 279 S.W.3d 502, 508 (Ark. 2008) ("[T]he opinion of an expert will be considered to be substantial evidence unless it clearly appears that the expert's opinion is opposed to physical facts or to common knowledge or to the dictates of common sense, or is pure speculation."). Also not negating other possible causes are: (1) employee Harrington's confirmation of a single coil malfunction elsewhere, or (2) Rhodes and Hamner's belief that the explosion originated in the boiler.

Rhodes's explanation for the explosion is insufficient to create a genuine dispute of material fact. *See **Kapp v. Bob Sullivan Chevrolet Co.***, 353 S.W.2d 5, 17 (Ark. 1962) (holding that where plaintiff offered several possible causes of seatbelt failure, the case rested on "conjecture and speculation" and that the causes were only possibilities, not probabilities); ***Mixon v. Chrysler Corp.***, 663 S.W.2d 713, 714 (Ark. 1984) ("The possibility that the product may have been defective is not enough. The proponent of a products liability claim must produce evidence from which the trier of fact may reasonably conclude that it is more probable than not that the injury resulted from a defective product.").

The district court properly granted summary judgment to Rhodes on the strict products liability claim.

---

[3]This court thus need not address Rhodes's passing references to Fulton's failure to preserve fire scene evidence, especially the boiler, in light of National Fire Protection Association standards.

B.

According to the Supreme Court of Arkansas: "negligence is the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do." *Schubert v. Target Stores, Inc.*, 369 S.W.3d 717, 719 (Ark. 2010). "Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co. v. Slater*, 386 S.W.3d 439, 449 (Ark. 2012). "The burden in a negligence case is always on the party asserting the claim; negligence is never assumed." *Id.* It "may be established by direct or circumstantial evidence, but a plaintiff may not rely on inferences based on conjecture or speculation." *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 519 S.W.3d 291, 302 (Ark. 2017). "[T]he mere fact that an accident occurred is not evidence of negligence." *Schubert*, 369 S.W.3d at 719.

Rhodes argues that Fulton's inspections of the 21-year-old internal coils were inadequate, because technicians entering the boiler would examine (at most) 25 percent of the boiler's tubing. He contends that the white cloud before the explosion was consistent with a coil perforation that leaked Paratherm, which Harrington admitted had occurred once before. He believes that Caggiano's testimony shows that Fulton should have required radiographic inspections, covering not-examined inner tubes, outer tubes, the heat exchanger, and coke buildup.

Even if Rhodes proved a duty and a breach, he failed to present evidence of proximate causation. Rhodes ignores his expert's admissions: (1) no evidence showed any perforation before July 8, 2020—the day before the explosion; and (2) if the fire had been caused by a malfunctioning internal coil, it would have occurred "pretty soon before the fire," and likely would have produced physical evidence of a leak. It is undisputed that Fulton regularly inspected the boilers—including three days before the incident—and identified no issues. Proximate causation cannot be established where Rhodes cannot prove that there was any detectable perforation

-7-

when Fulton inspected the boiler.  *See* ***Neal v. Sparks Reg'l Med. Ctr.***, 422 S.W.3d 116, 121 (Ark. 2012) ("Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ, a question of law is presented for determination by the court.  When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law.") (cleaned up); ***Nationwide Rentals Co. v. Carter***, 765 S.W.2d 931, 935–36 (Ark. 1989) (same).

The district court properly granted summary judgment to Rhodes on the negligence claim.[4]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[4]This court thus need not address Fulton's cross-appeal.