JEFFERSON HOSPITAL ASSOCIATION, INC.,
and St. Paul Fire & Marine Insurance Company
*v.* Patsy C. GARRETT, Administratrix of
the Estate of Edith O. Crain, Deceased.

90-155                                      804 S.W.2d 711

Supreme Court of Arkansas
Opinion delivered March 4, 1991.

*Mitchell, Williams, Selig, and Tucker,* by *Richard L. Angel,* for appellants.

*Bill R. Holloway, Howard M. Holthoff,* and *Laurie A. Bridewell,* for appellee.

ROBERT H. DUDLEY, Justice. Plaintiff, Patsy Garrett, as administratrix of her mother's estate, filed suit against defendant, Jefferson Hospital Association, Inc., and its insurer, defendant, St. Paul Fire & Marine Insurance Company. The complaint alleged the hospital was negligent in leaving the decedent unattended on a bedside commode, and that negligence resulted in a fall which was the proximate cause of her death. The complaint sought damages for the decedent's medical and funeral expenses, conscious pain and suffering, mental anguish, and loss of consortium. The case was tried to a jury. At the close of the plaintiff's case, the defendants did not move for a full directed verdict, instead, they moved for a partial directed verdict and argued that the decedent's survivors did not present evidence of more than normal grief. At the close of all of the evidence they renewed their motion for a partial directed verdict. The jury returned a plaintiff's general verdict in the amount of $180,000.00. The defendants appeal, and in their first point of

appeal argue that the trial court erred in refusing to grant their motion for a partial directed verdict.

■ Procedurally, it is not necessary for us to discuss the merits of the defendants' argument. The plaintiff proved that the estate had medical and funeral expenses; the surviving husband suffered a loss of consortium; and the decedent had conscious pain and suffering. These elements of damage were independent of the mental anguish suffered by the survivors. The case was submitted to the jury on a general verdict rather than on interrogatories. *See* ARCP Rule 49(a). Consequently, we do not know, and will not assume, that the jury awarded any damages for the mental anguish of the survivors. Therefore, even if the defendants were correct in their legal arguments we would not reverse this case. However, the defendants also are in error on their legal arguments. In order to address their legal arguments we first set out the facts.

Edith Crain, the decedent, was admitted to the defendant hospital on Thursday, July 18, 1985. There it was determined that she had an arrhythmic heartbeat which necessitated the immediate implantation of a temporary pacemaker. A permanent pacemaker was inserted the next day. She progressed well after the surgery, and was expecting to return home on Monday, July 22. On Sunday, July 21, members of her family stayed with her until approximately 10:00 p.m. Very early the next morning she signaled the nurses with her call light because she needed to use the bedside commode. The nurse responding to the call helped Mrs. Crain get on the commode; told her she would wait outside until Mrs. Crain needed to get back in bed; received another request for help from a patient across the hall; went to check on the other patient; heard a noise; went back to Mrs. Crain's room; and found her on the floor beside her bed. The nurses determined the extent of Mrs. Crain's injuries and got her back to bed. (The defendants do not appeal the finding that they were negligent.)

At approximately 6:00 a.m. that same morning, Mrs. Crain's son, Birt, Jr., arrived at her room. She reported her fall, and he saw that one side of her face was swollen and "completely black and blue." The swelling and discoloration eventually progressed down the side of her neck. There was also a marked difference in her attitude and condition. She was discharged from

the hospital on July 26, but she did not improve. In fact, her course went from bad to worse. She was lethargic and stayed in bed ninety percent of the time. On August 8, 1985, she returned to the emergency room of the hospital. She was vomiting and "talking out of her head," exclaiming "hold me, hold me." She screamed every time she was touched. Subsequently, a neurosurgeon performed a cranial burr. It involved drilling holes in her skull in an attempt to drain fluid which might have accumulated. She could not move. She could not talk. She communicated by squeezing family members' hands. She remained at appellant hospital until August 26 when she was moved to Baptist Medical Center in Little Rock. She died on October 9, 1985, never having left Baptist Medical Center.

Defendants argue that the trial court erred in denying their motion for a partial directed verdict on the issue of mental anguish suffered by the decedent's survivors. The argument has no merit.

In determining whether to grant a motion for directed verdict, the trial court must view the evidence, and all reasonable inferences derived from it, in the light most favorable to the party opposing to the motion. *Grain Dealers Mut. Ins. Co.* v. *Porterfield*, 287 Ark. 27, 695 S.W.2d 833 (1985). The evidence must be given its highest and strongest probative value, and the motion must be granted if the evidence is so lacking in substance that it would require a jury verdict to be set aside. *Id.* There was sufficient evidence here for the issue of mental anguish of the survivors to go to the jury.

Mental anguish means the mental suffering resulting from emotions such as grief and despair. It must be real and with cause and be more than the normal grief occasioned by the loss of a loved one. AMI Civil 3d, 2215. In *Martin* v. *Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986), we explained the difficulty that accompanies application of the mental anguish statutes to particular factual settings:

> The General Assembly has clearly stated that the public policy of this State is to allow recovery for wrongful death and for the mental anguish of survivors of the deceased. . . . The application of the mental anguish statutes to particular fact situations has given us difficulty

through the years simply because mental anguish of all survivors is a natural incident of practically every wrongful death. *We have construed the statutes to mean that the proximity of relationship between the deceased and the survivors is the most significant factor in determining whether recovery is allowable.* Distant relatives generally have no more than normal grief and will not be allowed to recover without establishing something more.

(Emphasis added.)

■ We have set forth thirteen factors which a jury may consider in evaluating the relationship between the deceased and the survivors. *Martin* v. *Rieger*, 289 Ark. at 296; *St. Louis S.W. Ry. Co.* v. *Pennington*, 261 Ark. 650, 553 S.W.2d 436 (1986); AMI Civil 3d, 2215. It is not necessary to list all of them here. The survivors in the instant case are the deceased's husband, Birt, Sr., and her two adult children, Birt, Jr. and Patsy. Birt, Sr., testified that he and the decedent were married for fifty-one years; she helped him in the fields; one year she brought in the whole crop when he was sick; she cooked, cleaned, ironed, and gardened for him; they never fussed; he stayed with her at the hospital, sleeping there many nights; and since she's been gone, "everything is just blank." Patsy testified that she saw her mother almost every day; they were very close; since the mother's death, Patsy has had to have help from her pastor; and her doctor has also given her medication because she has been depressed and has trouble sleeping. Birt, Jr., testified that he lived with his parents until he got married in 1968, and that he subsequently moved behind their house; he visited with his mother every day; he experienced emotional problems after her death and has had many sleepless nights.

Clearly, at least four of the factors were established by this testimony: (1) there were strong familial and marital ties of affection; (2) there was frequent association and communication; (3) the attitude of decedent and survivors was loving and close; and (4) the survivor's grief was intense. In short, there was substantial evidence in support of an award for mental anguish for any and all of the survivors, and the trial court was correct in refusing to direct a verdict on this claim.

■ The other point raised by defendants is that the jury's

verdict was excessive. It is well established that the jury has great discretion in determining the amount of damages in wrongful death cases, and we will not disturb their verdict unless it is shown to have been influenced by prejudice or passion, or it is so grossly excessive as to shock the conscience of the court. *Martin* v. *Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986). Defendants have not established that the amount of the verdict was influenced by either passion or prejudice, and the amount of the verdict does not shock our conscience.

Affirmed.

GLAZE, J., not participating.