Darren SMITH and USA Truck, Inc. *v.* Dorien GALAZ

97–281                                              953 S.W.2d 576

Supreme Court of Arkansas
Opinion delivered October 16, 1997

*Wright, Lindsey & Jennings*, by: *James M. Moody, Jr.* and *Troy A. Price*, for appellants.

*Gary Eubanks & Associates*, by: *Willaim Gary Holt*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellee Dorien Galaz was injured when her parked tractor-trailer was struck by another tractor-trailer owned by appellant USA Truck, Inc., and driven by appellant Darren Smith. The accident occurred in the parking lot of a North Little Rock truck stop on July 27, 1994. Galaz sued USA Truck and Smith for negligence, and a jury returned a $300,000.00 verdict in Galaz's favor. After the trial court entered judgment in the amount of the verdict, USA Truck and Smith filed a motion for new trial on the ground of excessive damages. The trial court denied the motion, from which USA Truck and Smith now appeal, raising two issues: (1) that the jury award is excessive and (2) that the trial court erred in admitting hearsay testimony at trial. Because we conclude that neither argument has merit, we affirm the trial court's judgment.

## 1. Excessive jury award

Smith first alleges that the jury award of $300,000.00 was so excessive as to shock the appellate court's conscience. We have stated that the standard of review we utilize in deciding whether a jury award is excessive is whether the verdict is so great

as to shock the conscience of this court or demonstrate passion or prejudice on the part of the trier of fact. *Houston v. Knoedl*, 329 Ark. 91, 947 S.W.2d 745 (1997); *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997). In doing so, we review the proof and all reasonable inferences most favorably to the appellee. *Id.* In determining whether the amount of damages is so great as to shock the conscience, we consider such elements as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish. *Builder's Transp., Inc. V. Wilson*, 323 Ark. 327, 914 S.W.2d 742 (1996). Our determination of whether a jury verdict is so excessive as to shock the conscience is made on a case-by-case basis. *Id.* We have said that the jury has much discretion in awarding damages in personal injury cases. *Id.*

In the present case, Galaz was standing in the cab of her tractor-trailer when Smith, who was speeding to make a left turn to back into a parking space, clipped the left front fender of her trailer with his rig. According to Galaz, upon impact, her neck snapped, then she fell back and hit the wall of the sleeper bunk in her rig. She did not go to the doctor immediately because she thought the pain would eventually go away. On August 29, 1994, approximately one month after the accident, Galaz, feeling pain in her left shoulder and experiencing numbness in her left arm, went to see Dr. Carl McKenney, a neurologist. After ordering a CT test, Dr. McKenney recommended that Galaz undergo physical therapy and an EMG nerve conduction. He also prescribed Darvocet, a pain medication, and suggested that she see Dr. Richard Hamer, a neurologist, and Dr. Samuel Finn, a neurosurgeon, for further treatment.

At trial, Galaz offered the deposition testimony of Dr. Hamer, who testified that Galaz had osteoarthritis, a degenerative condition common among truck drivers, a small posterior central disc herniation, and a ruptured disc, a new injury. According to Dr. Hamer, there was no question that the osteoarthritis existed prior to the accident. However, according to Dr. Hamer, with this chronic condition, any added force could rupture the disc — "it [was] like an accident waiting to happen." It was Dr. Hamer's testimony that "the thing that really brought [Galaz] to the doctor

was the ruptured disc." Regarding permanent impairment, he testified that Galaz would have a continuous pain requiring Advil, Tylenol, or similar medications, and would have difficulty using her neck.

Dr. James Bland, a neurosurgeon, saw Galaz on November 28, 1994, on February 17, 1995, April 20, 1995, June 8, 1995, and July 20, 1995. During each of these visits, Galaz complained of pain on the left side of her neck and numbness in her left arm. According to Dr. Bland, Galaz's symptoms were common among those persons suffering from aggravated degenerative disc disease.

The accident in question resulted in $3,334.79 in property damages to the tractor-trailer Galaz was driving. In addition to these damages, Galaz presented evidence that she incurred $7,409.74 in medical expenses. Her weekly average income as a truck driver prior to the accident was $455.54. Galaz returned to work in November 1995, taking a job as a server at Shoney's. In April 1996, she began working at International House of Pancakes. She assumed full duties as a server with the exception of heavy lifting. She worked between thirty-six and forty hours per week at $2.13 per hour plus tips, which amounted to an extra $400 to $600.00 per month.

When reviewing the facts at bar, it is clear that Galaz was simply an "eggshell plaintiff," or one who was susceptible to enhanced injury by virtue of an existing condition, which, in this case, was osteoarthritis. See *Avery v. Ward*, 326 Ark. 829, 933 S.W.2d 810 (1996). Matters of causation and credibility are questions of fact for the jury to decide. *Id.* Galaz produced evidence that the accident caused her to suffer a ruptured disc. Dr. Hamer testified that Galaz would suffer some permanent loss of normal function in that she would have continuous pain requiring medications such as Advil or Tylenol, and that she would have difficulty using her neck.

Galaz also presented proof of mental anguish as a result of the accident. It was her testimony that she was not happy with her position as a waitress, for she would rather be out on the road as a truck driver where she could enjoy traveling and seeing the country. The accident had an emotional impact on her; she felt as

though she had been stripped of her livelihood. She could no longer ride horses, whereas she had been very active in horse shows and horseback riding prior to the accident.

When considering this evidence, we conclude that the proof supported the conclusion that Galaz suffered a permanent injury that will cause her pain and discomfort and that has changed her life in that she can no longer pursue either her chosen career as a truck driver or her preferred social activities such as horseback riding. We cannot say that the verdict of $300,000.00 is so great as to shock the conscience of this court or to demonstrate passion or prejudice on the part of the jury.

### 2. Hearsay objection

At trial, Galaz offered the deposition testimony of Joe Neal Hilman, a manager of the pancake restaurant where Galaz worked after the accident. Smith objected to the following portion of the deposition being shown to the jury:

> QUESTION: Did you observe [Galaz] having any problems or limitations from the injuries that she attributed to the accident?
>
> ANSWER: Observations, no sir. But she explained to me that she had limitations in her capacity as a server, because there is a requirement to take the bus tub from the table and some lifting over — between 15 and 25 pounds. And she explained to me about the accident. And I told her she didn't have to do it if that was the situation, and that I would take care of it.

On appeal, Smith claims that the trial court erred in admitting this testimony because it was hearsay, and, under A.R.E. Rule 802, the jury could have taken it as proof of Galaz's limitations in her new job. Smith further claims that the error was not harmless because this evidence "from a seemingly disinterested third party seems likely to have influenced the assessment of damages." According to Smith, it is "impossible to say that the jury did not credit [Galaz's] employer on the matter of whether [her] injury prevented her from having a future as a capable and efficient server."

Galaz argued at trial that the portion of Hilman's deposition testimony at issue was admissible as an exception to the

hearsay rule. Particularly, she argued that the testimony was admissible under A.R.E. Rule 803 (3) as a then-existing physical condition. On appeal, we will not reverse the trial court on a ruling on the admission of evidence absent an abuse of discretion. *Warhurst v. White*, 310 Ark. 546, 837 S.W.2d 857 (1992). The evidentiary rule at issue, A.R.E. Rule 803 (3), provides as follows:

> Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In the present case, Galaz offered the testimony of Hilman to prove the truth of the matter asserted — that she had physical limitations in her new job after the accident. It is significant that the declarant, Galaz, was present and testified in front of the jury. In fact, she also testified that she could not do any heavy lifting at the pancake restaurant because of the accident. Under these circumstances, we cannot say that Smith and USA truck were prejudiced by the admission of the portion of Hilman's deposition testimony at issue. Nor can we say that the trial court abused its discretion in admitting this evidence under A.R.E. Rule 803 (3) as evidence of a then-existing physical condition.

We affirm the judgment of the trial court.