Eugene CATHEY, III *v.* STATE of Arkansas

CR 02-318                                                    95 S.W.3d 753

Supreme Court of Arkansas
Opinion delivered January 23, 2003

*Joe Kelly Hardin,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Eugene Cathey was convicted of capital murder and, because the State had waived the death penalty, was sentenced to life in prison for the

shooting death of Delone "D.J." Washington on October 12, 2000.

On appeal, Cathey raises only one argument: Judge Gary Arnold erred in denying his motion for directed verdict, because he had heard only one witness testify during trial. At the conclusion of the State's case, Cathey moved for a directed verdict, which the presiding judge, Judge Grisham Phillips, denied. At that time, the court recessed, and in the interim, Judge Phillips was called away for a family medical emergency. When the court reconvened, Judge Arnold presided over the trial. Judge Arnold asked Cathey directly if he understood the situation and if he had any objection to Judge Arnold completing the trial, at least through the guilt-or-innocence phase. Cathey replied that he had no objection.

Cathey called one witness for his case-in-chief, and he then rested. Judge Arnold read the instructions and verdict forms to the jury. The State and Cathey gave their closing arguments, and the jury then retired to deliberate on the guilt phase.

The State then proceeded to make a record of the fact that it had no objection and concurred with Judge Arnold sitting on this case for the guilt/innocence phase and for sentencing if necessary. Cathey made no response. The jury was out for nearly two-and-a-half hours, and then returned with a guilty verdict on the capital murder charge. The jury then retired again to deliberate sentencing. At that point, the following exchange occurred:

| THE COURT: | Mr. Cathey, if you and your attorneys will step up here, I know there's a motion or I want to make sure we make a record on your previous [sic] and the Court recognizes your previous position. But with respect — Mr. Hardin [defense counsel], I'll let you go ahead. |
|---|---|
| MR. HARDIN: | Your Honor, Mr. Cathey did not agree to you as sitting on the sentencing phase and he does object to having a judge substituted |

in the sentencing phase for a trial in which another judge tried the actual jury trial.

THE COURT: Mr. Cathey, I understand what your attorney just said, and do you again acknowledge that you had no objection to my hearing the case through the conclusion of the guilt or innocence phase, you simply object to my hearing the case from this point through the sentencing phase. Is that correct?

MR. CATHEY: Yes, sir.

THE COURT: Well, your objection is noted and I'm going to overrule that objection, not grant your request, and proceed with the trial through its conclusion, but a record has been made.

MR. HARDIN: And we also would have the record show to renew my motion for a directed verdict on the capital murder charge and that there was insufficient evidence for a deliberated purpose of the killing.

THE COURT: So noted. Does the State have any response to that?

MR. STANDRIDGE: No, just that Judge Phillips had ruled initially there was sufficient proof to take it to the jury, and we would just renew our argument that there was sufficient proof to take it to the jury.

THE COURT: I'll again deny that motion. Please have a seat. We'll be in recess until the jury returns with its verdict on punishment.

The jury returned shortly thereafter and sentenced Cathey to life in prison.

On appeal, Cathey's argument states simply that Judge Arnold did not review the earlier trial testimony, which Judge Phillips had heard, and that Judge Arnold could not possibly have made a determination on whether Cathey's directed-verdict

motion should be granted or denied. However, Cathey had failed to renew his motion for directed verdict at the close of his own case, and indeed, he did not renew it until after the jury had already returned a verdict of guilt on the capital murder charge.

██ ██ Our case law is well-settled that the renewal of a directed-verdict motion is more than a matter of mere form: it goes to the substance of the evidence arrayed against the criminal defendant; therefore, it is too late to renew a motion for directed verdict after the jury has been charged. *See Rankin v. State*, 329 Ark. 379, 386, 948 S.W.2d 397, 401 (1997) (death penalty case in which this court refused to consider a sufficiency-of-the-evidence argument because appellant Rankin did not attempt to renew his motion for directed verdict until after the jury had been charged); *Thomas v. State*, 315 Ark. 504, 868 S.W.2d 483 (1994) (capital murder case involving life imprisonment, in which this court held that Thomas's sufficiency argument was not preserved for appeal where he did not renew his motion for directed verdict until the jury "was well into the course of its deliberations"); *see also* Ark. R. Crim. P. 33.1(c). Here, Cathey did not only wait until after the jury had been instructed, and until after closing arguments; he waited to renew his motion until after the jury had already returned a verdict of guilty. Clearly, this issue is not preserved for appellate review.

██ Finally, we note that Cathey raised one objection that merits mentioning pursuant to Ark. Sup. Ct. R. 4-3(h), although it does not warrant reversal. Cathey specifically objected to Judge Arnold presiding over the sentencing phase of his trial, and Judge Arnold overruled his objection. Although this was an adverse ruling, it does not constitute reversible error because Cathey was not prejudiced by it. Because he was convicted of capital murder, and the State had waived the death penalty, life imprisonment was the only possible sentence he could have received.

Affirmed.