WAL-MART STORES, INC., and Russell White *v.*
Vivian TUCKER, *Individually* and as *Administratrix* of
the Estate of John Kenneth Tucker, *et al.*

02-876 120 S.W.3d 61

Supreme Court of Arkansas
Opinion delivered June 19, 2003

732

*Jones & Hudspeth* (Texarkana, Texas), by: *Michael F. Jones*; and *Kutak Rock, LLP* (Lincoln, Nebraska), by: *Norman M. Krivosha*, for appellants.

*Law Offices of E. Ben Franks* (Texarkana, Texas), by: *E. Ben Franks*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal stems from the negligence of a Wal-Mart pharmacist in misfilling a prescription for John Tucker that purportedly resulted in his death. A jury awarded $150,000 to Mr. Tucker's estate, $1,000,000 to his wife, and $125,000 to his daughter. Wal-Mart Stores, Inc., and its pharmacist, Russell White, argue on appeal that there was insufficient evidence to support a finding on the element of proximate cause, that the verdict in favor of Mrs. Tucker was a result of passion or prejudice, and that the award to the daughter was not supported by substantial evidence. We affirm.

After working for thirty years in Dallas, Texas, John Tucker and his wife Vivian Tucker retired to DeQueen, Arkansas. While in Dallas, John had undergone cardiac bypass surgery. As of his last check-up in 1996, his cardiologist indicated that John had a life expectancy of five to ten years. When the Tuckers moved to Arkansas, John became a patient of Dr. Keith Mitchell, a family practitioner in Sevier County.

Because John was overweight, Dr. Mitchell prescribed Zaroxolyn to help reduce fluid retention. Zaroxolyn is a diuretic

designed to prevent fluid build up in patients with congestive heart failure. On May 15, 1997, John went to a Wal-Mart pharmacy to have the Zaroxolyn prescription filled. Russell White, the pharmacist on duty, misfilled the prescription; instead of Zaroxolyn, John's prescription was filled with Ziac, a beta-blocker.

Shortly after May 15, 1997, John suffered from substantial weight gain due to water retention. He was eventually hospitalized in DeQueen on July 15, 1997, under the care of Dr. Mitchell. Over the course of several days, John's doctors were able to reduce his fluid retention and hence his excess weight. He was discharged from the hospital on July 20, 1997. At that time, Dr. Mitchell was unaware of the pharmacist's mistake in filling the earlier prescription for Zaroxolyn, so he directed John to return home and double his intake of Zaroxolyn.

John complied with his doctor's instructions; however, because of the misfilled prescription, he proceeded to double his intake of Ziac instead of Zaroxolyn. Once again, John experienced a significant gain in weight due to fluid retention. This time, he was hospitalized in Texarkana on July 28, 1997, under the care of Dr. James Hurley. Upon admission to St. Michael Hospital, John was diagnosed with a kidney illness. During this hospitalization, doctors treated him for the kidney condition, and his weight gain due to fluid retention was reduced. John was subsequently released from the hospital on August 9, 1997, and directed to increase his Zaroxolyn intake.

On August 28, 1997, only two capsules remained from the prescription filled on May 15, so John returned to Wal-Mart for a refill. When the pharmacist, Russell White, examined the two remaining capsules, he discovered that he had mistakenly filled the May 15 prescription for Zaroxolyn with Ziac. Upon discovering his error, Mr. White advised the Tuckers that he would contact John's doctors. In fact, Mr. White never did talk with any of John's doctors, although he did make a call to a doctor's office.

John returned home with the properly filled prescription of Zaroxolyn, but without a diminishing supply of Ziac. One week later, on September 4, 1997, he died from a myocardial infarction.

Vivian Tucker, individually and as Administratrix of the Estate of John Tucker, deceased, filed suit against Wal-Mart Stores, Inc., and Russell White. In her capacity as the administratrix of her husband's estate, Vivian brought the action on behalf of the estate, John's daughter, Johnny Faye Hoffman, and his two grand-daughters.[1] Following a two-day trial in which four doctors testified as experts, the jury returned a verdict awarding damages in the amount of $150,000 to the estate, $1,000,000 to Vivian Tucker for mental anguish and loss of consortium, and $125,000 to Johnny Faye Hoffman for mental anguish. On March 28, 2002, the circuit court entered judgment against Wal-Mart and Russell White, jointly and severally, for the total amount of damages awarded by the jury, $1,275,000, together with costs and postjudgment interest at the rate of ten percent (10%) per annum. On April 5, 2002, Wal-Mart filed a posttrial motion for judgment notwithstanding the verdict, or in the alternative, a motion for new trial, or a motion for remittitur. All three motions were denied by the circuit court on April 29, 2002.

Wal-Mart and Mr. White (hereinafter referred to collectively as "Wal-Mart") bring this appeal contending that the trial court erred in refusing to grant a new trial or a remittitur of the total award. First, Wal-Mart contends that Vivian Tucker failed to show that her husband's death was proximately caused by the misfilled prescription. Second, Wal-Mart contends that the award of $1,000,000 to Vivian Tucker individually was the result of passion and prejudice. Lastly, Wal-Mart maintains there was no reliable evidence introduced to support the award of $125,000 to Johnny Faye Hoffman for mental anguish.

### I. Motion for New Trial

■ In any action for medical injury, the plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the plaintiff's injuries. *See Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002) (applying Ark. Code Ann. § 16-114-206). For its first point on appeal, Wal-Mart

---

[1] The granddaughters' claims were dismissed by the circuit court.

argues that Vivian Tucker failed to put on evidence that her husband's death was proximately caused by the misfilled prescription. In effect, Wal-Mart's motion for a new trial is an attack on the sufficiency of the evidence supporting the proximate-cause element of the cause of action for medical injury. As such, Wal-Mart's argument challenges the sufficiency of the evidence to support the jury verdict, and has not been properly preserved.

▪ Rule 59 of the Arkansas Rules of Civil Procedure provides eight grounds for a new trial. Rule 59 states in pertinent part:

> (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: . . . (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law.

Ark. R. Civ P. 59(a) (2003). However, a motion for new trial is not a challenge to the sufficiency of the evidence. *Yeager v. Roberts*, 288 Ark. 156, 702 S.W.2d 793 (1986). The proper vehicle to contest the sufficiency of the evidence is a directed-verdict motion or a motion for judgment notwithstanding the verdict (JNOV). *See* Ark. R. Civ. P. 50 (2003).

▪ Rule 50(e) states that "[w]hen there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence *to support the jury verdict.*" Ark. R. Civ. P. 50(e) (2003) (emphasis added). The purpose of a motion for directed verdict is to provide a procedure for determining whether the plaintiff has met the burden of establishing a *prima facie* case. *Wilson Safety Products v. Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990). Moreover, Rule 50(a) requires that a party moving for a directed verdict state specific grounds in order to bring the issue to the trial court's attention. *See* Ark. R. Civ. P. 50(a) (2003); *Ouachita Wilderness Inst., Inc., v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997). A trial court is to evaluate the motion for directed verdict by deciding whether the evidence would be

sufficient for the case to go to the jury. *First United Bank v. Phase II*, 347 Ark. 879, 69 S.W.3d 33 (2002).

■ The distinction between a motion for new trial and a directed-verdict motion is a fine one. When a defendant makes an argument that the verdict is clearly against the preponderance of the evidence because the evidence is insufficient to establish one element of a *prima facie* case to support the cause of action, that argument is in substance a challenge to the sufficiency of the evidence.

■ In 1983, Rule 50 was amended and we stated: "Rule 50 will no longer allow the sufficiency of the evidence to be challenged by a motion for a new trial, only by a motion for a directed verdict and motion for judgment notwithstanding the verdict." *In re Amendments to the Rules of Civil Procedure*, 279 Ark. 470, 471, 651 S.W.2d 63 (1983); *see also Majewski v. Cantrell*, 293 Ark. 360, 737 S.W.2d 649 (1987) ("[A] party must test the sufficiency of the evidence by motions for directed verdict and judgment notwithstanding the verdict, not by a motion for new trial.").[2] In *Yeager v. Roberts*, 288 Ark. 156, 702 S.W.2d 793 (1986), we enunciated the subtle distinction between a sufficiency challenge under Rule 50 and a motion for new trial under Rule 59. We stated that "[a] party does not have to make a motion testing the sufficiency of the evidence to go to the jury as a prerequisite to making a motion for a new trial." *Yeager v. Roberts*, 288 Ark. at 157, 702 S.W.2d at 794. A motion for a new trial under Rule 59 based on the verdict being clearly contrary to the preponderance of the evidence does not test the sufficiency of the evidence, and is not precluded by Rule 50(e). *Yeager v. Roberts, supra; see also* Ark. R. Civ. P. 50 Addition to Reporter's Notes, 1983 Amendment ("Rule 50(e) is amended to omit the reference to the motion for new trial as a means of challenging the sufficiency of the evidence. Motions for directed verdict and judgment notwithstanding the verdict are used to challenge the sufficiency of the evidence.").

---

[2] The concurrence cites *Chevrolet C. v. Collins*, 271 Ark. 469, 609 S.W.2d 118 (Ark. App. 1980) for the proposition that there is confusion regarding whether an appellant can challenge the sufficiency of the evidence in a jury trial by moving for a new trial. That case is inapposite because it was decided prior to our 1983 amendment of Rule 50(e).

 In order to clear up any possible confusion that may exist with regard to our appellate standard of review, we take this opportunity to explain that, while a trial court evaluates a motion for directed verdict and a motion for judgment notwithstanding the verdict differently than a motion for new trial, an appellate court reviews a denial of any of those motions under the same standard. A trial court is to evaluate a motion for directed verdict or a motion for judgment notwithstanding the verdict by deciding whether the evidence is sufficient for the case to be submitted to the jury; that is, whether the case constitutes a *prima facie* case for relief. *First United Bank v. Phase II, supra; Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998). In making that evaluation, the trial court does not weigh the evidence; rather, the trial court is to view the evidence in a light most favorable to the party opposing the motion. *Swink v. Giffin, supra; Nationwide Rental Co., Inc. v. Carter*, 298 Ark. 97, 765 S.W.2d 931 (1989). To the contrary, in evaluating the motion for new trial under Rule 59(a)(6), the trial court must determine whether the verdict or decision is clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(6). In examining that motion, the trial court is permitted to weigh the evidence. *Dyers v. Woods*, 289 Ark. 127, 710 S.W.2d 1 (1986). On appeal from the denial of any of these motions, the appellate court affirms the verdict if it is supported by substantial evidence. *See Bearden v. J.R. Grobmeyer Lumber Co.*, 331 Ark. 378, 961 S.W.2d 760 (1998) (applying standard to a trial court's denial of a motion for new trial under Rule 59(a)(6)); *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001) (applying standard to trial court's denial of a motion for directed verdict). On appeal, Wal-Mart challenges the sufficiency of the evidence to support the proximate-cause element of the cause of action. Specifically the following statements are made throughout Wal-Mart's brief and reply brief:

> **A. THE TRIAL COURT ERRED IN REFUSING TO GRANT WAL-MART'S MOTION FOR NEW TRIAL WHEN THE PLAINTIFF FAILED TO INTRODUCE EVIDENCE THAT THE DECEASED'S DAMAGES, IF ANY, WERE PROXIMATELY CAUSED BY WAL-MART.**

* * * *

Before a party may prevail and obtain a verdict, the party seeking recovery must offer sufficient evidence to prove each and every necessary element of the cause of action for which that party has the burden of proof. To recover for negligence, the plaintiff is required to offer sufficient evidence to prove each and all of the following elements: . . . The failure of any one of these elements is sufficient to deny any recovery to the deceased.

\* \* \* \*

The evidence presented at trial clearly failed to prove that Wal-Mart's negligence was the proximate cause of Mr. Tucker's death. In fact, not one expert testified within one reasonable degree of medical certainty that the mis-fill was the proximate cause of Mr. Tucker's death. To the contrary, the expert testimony established that Mr. Tucker's death was not caused by the mis-fill or that, at least, the cause of Mr. Tucker's death could not be definitively stated under the circumstances.

\* \* \* \*

Not one expert, however, testified to a reasonable degree of medical certainty that the mis-fill proximately caused Mr. Tucker's death. In fact, if the expert testimony established anything, it established that the mis-fill was not the proximate cause of his death. Only one expert stated a conclusion based on a reasonable degree of medical probability as to the proximate cause of Mr. Tucker's death and his conclusion was that the mis-fill did not cause Mr. Tucker's death.

\* \* \* \*

Not only does the testimony of every expert fail to eliminate other potential causes of death, but all the experts agree that there were other factors that contributed to or caused Mr. Tucker's death.

\* \* \* \*

[T]his is a case questioning whether Appellees can establish proximate cause when they have offered *no* evidence regarding proximate cause. That makes it a question regarding whether the evidence was substantial in that it did not exist and not whether it was sufficient.[3]

---

[3] The concurrence seeks to preserve Wal-Mart's point on appeal by stating that "[t]he phrase 'was contrary to the preponderance of the evidence' was quoted verbatim in

We conclude that Wal-Mart's point on appeal is a challenge to the sufficiency of the evidence. The Arkansas Court of Appeals has also addressed the exact same issue and held that because a defendant-appellant's motion for a new trial contended that the plaintiff presented no evidence of damages, the appeal was really a challenge to the sufficiency of the evidence, and not a motion for new trial under Rule 59. *Benton v. Barnett*, 53 Ark.App. 146, 920 S.W.2d 30 (1996). We agree with the court of appeals. Like the case *sub judice*, in *Benton, supra*, the appellant was barred from challenging the sufficiency of the evidence to support an element of the cause of action by means of a motion for new trial.

▮▮ The appropriate time to challenge the sufficiency of the evidence to support each element of a cause of action is by a directed-verdict motion. *See Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002). The failure to move for a directed verdict at the conclusion of all the evidence, or to move for judgment notwithstanding the verdict, because of insufficiency of the evidence, will constitute a waiver of any question pertaining to the sufficiency of the evidence to support a jury verdict. Ark. R. Civ. P. 50(e) (2003). Here, Wal-Mart failed to move for a directed verdict at the conclusion of all the evidence, thereby waiving any question pertaining to the sufficiency of the evidence to support a jury verdict. Accordingly, because Wal-Mart's motion for a new trial is really a challenge to the sufficiency of the evidence supporting the proximate-cause element of Vivian Tucker's action for medical injury, it has not been properly preserved.

## II. Damages — Excessive as a Result of Passion and Prejudice

▮ For its second point, Wal-Mart argues that the $1,000,000 verdict in favor of Vivian Tucker was the result of passion and prejudice on the part of the jury. We recognize that a new trial may be granted if a verdict awards excessive damages appearing to have been given under the influence of passion or prejudice. Ark. R. Civ. P. 59(a)(4) (2003). Additionally, remitti-

---

Wal-Mart's motion for a new trial." However, Wal-Mart's brief on appeal is devoid of any reference to the evidence being "contrary to the preponderance of the evidence." Instead, Wal-Mart bases its entire appeal on the sufficiency of the evidence.

tur is appropriate when the compensatory damages awarded cannot be sustained by the evidence. *Johnson v. Gilliland*, 320 Ark. 1, 896 S.W.2d 856 (1995). Every case involving the issue of an excessive verdict must be examined on its own facts; and before this court can constitutionally reduce a verdict we must give the evidence in favor of the verdict its highest probative force and then determine whether there is any substantial evidence to sustain the verdict. *Kelley v. Wiggins*, 291 Ark. 280, 724 S.W.2d 443 (1987). Additionally, the court may not substitute its judgment for the jury's when there is a basis in the evidence for the award and when there is no evidence, appropriately objected to, which tends to create passion or prejudice. *Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996); *McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994); *Morrison v. Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981).

The verdict in favor of Vivian Tucker was for mental anguish and loss of consortium. Generally, the amount of damages growing out of mental anguish is left to the determination of the jury. *Houston v. Knoedl*, 329 Ark. 91, 947 S.W.2d 745 (1997). Wal-Mart points out that Vivian Tucker's award was almost seven times that of the award to her husband's estate. Wal-Mart's brief also references various verdicts from unreported trial court cases to buttress its claim that the award in this case was excessive. Evidence of those awards was not introduced below and is not a part of the record on appeal. We do not consider matters outside the record on appeal. *Black v. Steenwork*, 333 Ark. 629, 970 S.W.2d 280 (1998). Moreover, we are unable to rely on awards made in other cases in determining whether an award of damages is excessive because a comparison of awards made in other cases is a most unsatisfactory method of determining a proper award in a particular case, not only because the degree of injury is rarely the same, but also because the dollar no longer has its prior value. *Kelley v. Wiggins*, 291 Ark. 280, 724 S.W.2d 443 (1987). More pointedly stated, our determination of whether a jury verdict is excessive is made on a case-by-case basis. *See Smith v. Galaz*, 330 Ark. 222, 953 S.W.2d 576. (1997).

Next, Wal-Mart complains that Vivian Tucker's counsel inflamed passion in the jury by giving the members a direc-

tive in closing argument to punish Wal-Mart by "sending a message" to the "corporate wrongdoer." In *Stecker v. First Commercial Trust Co.*, 331 Ark. 452, 962 S.W.2d 792 (1998), this court recognized that a "sending a message" argument may be improper where there is no allegation of punitive damages. (citing *Smith v. Courter*, 531 S.W.2d 743 (Mo. 1976); *Maercks v. Birchansky*, 549 So. 2d 199 (Fla. App. 1989)). Wal-Mart, however, failed to object to these statements during the closing. This court has held that objections to remarks in closing argument must be made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury. *Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987). Because Wal-Mart failed to properly object to counsel's "sending a message" argument, we will not consider this point in evaluating whether the verdict was a product of passion or prejudice. *See Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996).

Nine of the twelve empaneled jurors signed the verdict in this case. Based on a colloquy between the court and the jury's foreperson, Wal-Mart suggests that the nine jurors who voted in favor of the plaintiff's verdict did not want to hear from the remaining three jurors on the amount of damages. Article 2, section 7, of the Arkansas Constitution states:

> [I]n all jury trials in civil cases, where as many as nine of the jurors agree upon a verdict, the verdict so agreed upon shall be returned as the verdict of such jury, provided, however, that where a verdict is returned by less than twelve jurors all the jurors consenting to such verdict shall sign the same.

Ark. Const. art. 2, § 7.

 At the outset, we decline to infer that merely because the verdict was signed by nine of twelve jurors, it was given under the influence of passion or prejudice. When an award is alleged to be excessive as a result of passion or prejudice, this court views the proof and all reasonable inferences most favorably to the appellees and determines whether the verdict is so great as to demonstrate passion or prejudice on the part of the trier of fact. *Houston v. Knoedl*, 329 Ark. 91, 947 S.W.2d 745 (1997). As to our review of damages awarded for mental anguish in wrongful-

death cases, we have considered the following factors in evaluating the excessiveness of such awards:

(1) The duration and intimacy of their relationship and the ties of affection between decedent and survivor.

(2) Frequency of association and communication between an adult decedent and an adult survivor.

(3) The attitude of the decedent toward the survivor, and of the survivor toward the decedent.

(4) The duration and intensity of the sorrow and grief.

(5) Maturity or immaturity of survivor.

(6) The violence and suddenness of the death.

(7) Sleeplessness or troubled sleep over an extended period.

(8) Obvious extreme or unusual nervous reaction to the death.

(9) Crying spells over an extended period of time.

(10) Adverse effect on survivor's work or school.

(11) Change of personality of the survivor.

(12) Loss of weight by survivor and other physical symptoms.

(13) Age and life expectancy of the decedent.

*Kelley v. Wiggins*, 291 Ark. 280, 724 S.W.2d 443 (1987) (citing *Martin v. Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986); *St. Louis Southwestern Ry. Co. v. Pennington*, 261 Ark. 650, 553 S.W.2d 436 (1977)).

The testimony elicited at trial revealed that John and Vivian Tucker had a very close relationship, and that Vivian suffered greatly from the loss of her husband. They had met in high school, and were married for 41 years. According to Vivian, the only time they were ever apart was for a short period when John moved to Arkansas in order to clear their land. Vivian described the loss of her husband as the most horrible period in her life. She testified that John was her best friend and fishing buddy. During the period that John was taking the misfilled prescription, Vivian took care of him. John was terrified throughout the experience, and she became upset upon learning about the pharmacist's mistake. Moreover, since her husband's death, Vivian has been forced to learn how to live by herself, but she has not been able to make

the adjustment. Now, she must depend on somebody other than her husband.

Other testimony confirmed the couple's close friendship, as well as Vivian's deeply-felt loss after her husband's death. One grandchild testified that John and Vivian seemed very happy together and loved to do things together. One of their good friends, Marty Brown, testified that Vivian was extremely upset and not ready for her loss. Marty described the loss as horrible. Another friend, Rusty Williams, testified that the Tuckers had a close relationship, and that he did not think Vivian had ever completely gotten over the loss. Vivian's sister, Glenda Gschnell, described the two as a classic married couple.

Viewing this evidence in the light most favorable to Vivian Tucker, it is evident that she and John had a very close relationship, and that she has been severely affected by her husband's death. Accordingly, we are unable to say that the $1,000,000 jury verdict was given under the influence of passion or prejudice.

### III. Damages — Proof of Mental Anguish

The final point on appeal is Wal-Mart's claim that an award of $125,000 to the decedent's daughter, Johnny Faye Hoffman, for mental anguish is not supported by substantial evidence. Wal-Mart failed to move for a directed verdict at the conclusion of all the evidence. Thus, to the extent that the argument under this point is a claim that the plaintiff presented no evidence of damages, it is really a challenge to the sufficiency of the evidence that has not been properly preserved for the reasons already stated under section I of this opinion. *See Benton v. Barnett*, 53 Ark.App. 146, 920 S.W.2d 30 (1996). Nonetheless, Wal-Mart also appears to be contending that the amount of damages awarded by the jury is not supported by the evidence. Wal-Mart cites *Jefferson Hosp. Ass'n, Inc. v. Garrett*, 304 Ark. 679, 804 S.W.2d 711 (1991), for the proposition that recovery for mental anguish must be based on something *more than normal* grief occasioned by the loss of a loved one. Additionally, Wal-Mart points this court to *Peugh v. Oliger*, 233 Ark. 281, 345 S.W.2d 610 (1961), and *Moore v. Robertson*, 244

Ark. 837, 427 S.W.2d 796 (1968), which rely on the premise that mental anguish means something more than the normal grief occasioned by the loss of a loved one. Pursuant to Arkansas Code Annotated section 16-62-102(f)(2) (Supp. 2001), when mental anguish is claimed as a measure of damages in a wrongful-death case, mental anguish includes grief *normally* associated with the loss of a loved one. Ark. Code Ann. § 16-62-102(f)(2) (Supp. 2001). Thus, the premises for the holdings in *Jefferson Hosp. Ass'n, Inc. v. Garrett, supra, Moore v. Robertson, supra,* and *Peugh v. Oliger, supra,* have been superseded by the Arkansas General Assembly.

 Wal-Mart further contends that *Peugh v. Oliger, supra,* stands for the proposition that an award of mental anguish based on testimony other than that of the aggrieved party is insufficient. We disagree. In that case, the court reversed an award in favor of two of the decedent's sons where they did not attend their father's funeral, did not appear at the trial, and did not testify. *Peugh v. Oliger, supra.* Moreover, the court qualified its conclusion based on the definition of "mental anguish" that has since been superseded. *Compare* Ark. Code Ann. § 16-62-102(f)(2) (Supp. 2001) *with Peugh v. Oliger, supra.*

 Wal-Mart's argument under this point hinges entirely on cases that have been legislatively superseded. Consequently, we find the argument to be without merit.

Affirmed.

GLAZE, THORNTON, and HANNAH, JJ., concur.

CORBIN, J., not participating.

TOM GLAZE, Justice, concurring. It does not appear that we have done anything to clarify this court's cases dealing with motions for directed verdict, judgment NOV, and new trial. What seems apparent to me is the courts have mixed what standards a trial judge employs when considering these procedural motions and the standards this court uses when it reviews these matters on appeal. Because I agree with the result reached in this case, I simply concur and ask our Civil Practice Committee to address this area of procedural confusion and offer its insight as to a solution.

Jim Hannah, Justice, concurring. I concur in the outcome in this case; however, I believe this court is in error in failing to reach the issues in the new trial motion, including whether there was substantial evidence to support the jury's verdict, and more particularly whether the jury's decision that Wal-Mart's conduct proximately caused the deceased's damages is contrary to the preponderance of the evidence. Additionally, I disagree that the issue of whether there is substantial evidence in support of the jury's verdict awarding damages to Tucker's daughter Johnny Faye Hoffman for mental anguish is procedurally barred. I would hold that the new trial motion was properly denied because the jury's verdict is not clearly contrary to the preponderance of the evidence. I write further to clarify the distinctions between a motion for a directed verdict and a motion for a new trial. The majority states that "[t]he distinction between a motion for a new trial and a directed verdict is a fine one." I believe that to the contrary, the distinction between the two motions is significant. The difficulty in making a distinction between the two motions arises primarily from terminology used by this court in the past in discussing the motions.

### Whether There Was a Motion for a New Trial

The majority concludes that while the motion may be captioned a motion for new trial, it is actually a motion for a directed verdict challenging the sufficiency of the evidence that was submitted to the jury. I agree that the discussion in the brief includes argument that is couched in terms of a challenge to the sufficiency of the evidence submitted to the jury. There is no doubt that Wal-Mart's brief mixes arguments, as the majority shows by quoting portions of the brief. However, even if some portions of Wal-Mart's brief may be interpreted to impermissibly challenge the sufficiency of the evidence submitted to the jury, that does not mean that the court may simply dismiss other portions of the brief that argue the trial court erred in denying the new-trial motion.

I first note that Wal-Mart cites *Gibson Appliance Co. v. Nationwide Insurance Co.*, 341 Ark. 536, 20 S.W.3d 285 (2000), for the proposition that this court reviews the denial of a motion for

new trial by determining whether the jury verdict is supported by substantial evidence. In *Gibson*, this court stated:

> The standard of review for a motion for new trial or, in the alternative, a motion for judgment notwithstanding the verdict, is the same for each, i.e., whether there is substantial evidence to support the jury verdict.

*Gibson*, 341 Ark. at 544-45. The majority agrees that this is the correct standard of review. Wal-Mart notes evidence submitted in the case and then argues that "the jury's verdict is not supported by substantial evidence, and the trial court's denial of Wal-Mart's motion for new trial must be reversed." Wal-Mart also argues that, "[n]ot only does the testimony of every expert fail to eliminate other potential causes of death, but all the experts agree that there were other factors that contributed to or caused Mr. Tucker's death." While Wal-Mart goes on to argue about proximate cause at this point, Wal-Mart is also arguing that the jury decided the case incorrectly in contradiction to the expert testimony that was submitted, or in other words, the decision of the jury was contrary to the preponderance of the evidence. Ark. R. Civ. P. 59. Wal-Mart further argues that the jury ignored other contributing factors causing Mr. Tucker's death. This again is a challenge to the decision made by the jury, not a challenge to the nature of the evidence submitted to the jury. Wal-Mart argued that based upon the evidence submitted to the jury, the jury made the wrong decision. The majority focuses on Wal-Mart's arguments on proximate cause and discusses a *prima facie* case in light of a motion for a directed verdict. I do not disagree that Wal-Mart couched its argument in large part in terms of the nature of the evidence that was submitted to the jury, however, the simple facts are, Wal-Mart moved for a new trial and now seeks review of that denial arguing that the jury's verdict was contrary to the preponderance of the evidence. There is argument to support that assertion. The argument that is irrelevant may simply be ignored. This court should address the issues that are presented.

The majority is correct in stating that a failure to make a motion for a directed verdict precludes this court from reviewing whether the evidence was sufficient to submit the issue to the jury. A challenge to the sufficiency of the evidence submitted to

the jury is made by a motion for a directed verdict. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254 (2002). For example, the brief includes language such as:

> "[t]he experts' testimony is not of sufficient force to compel a conclusion that Mr. Tucker's death was a proximate cause of the mis-fill. As a result, the jury's verdict is not supported by substantial evidence and the trial court's denial of the Wal-Mart's motion for new trial must be reversed."

The standard of review on a directed verdict motion is whether the jury's verdict is supported by substantial evidence.

> A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing a denial of a motion for a directed verdict, this court determines *whether the jury's verdict is supported by substantial evidence.*

*D.B. Griffin*, 349 Ark. at 104 (emphasis added); *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002); *Southern Farm Bureau Cas. Ins. v. Allen*, 326 Ark. 1023, 934 S.W.2d 527 (1996). However, on appeal from the denial of a motion for a new trial, this court also determines whether the jury's verdict is supported by substantial evidence. *Gibson Appliance Co. v. Nationwide Ins. Co.*, 341 Ark. 536, 20 S.W.3d 285 (2000); *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999); *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997); *see also Bearden v. J.R. Grobmyer Lumber Co.*, 331 Ark. 378, 961 S.W.2d 760 (1998); *Wilson v. Kobera*, 295 Ark. 201, 748 S.W.2d 30 (1988).

Substantial evidence in the case of a directed verdict motion is "evidence that goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other." *Southern Farm Bureau*, 326 Ark. at 1027. With respect to reviewing the denial of a motion for a new trial, this court stated in *Pineview Farms, Inc. v. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989):

> When acting upon a motion for new trial challenging a jury's verdict, the trial court is required by Ark. R. Civ. P. 59(a)(6) to set aside the verdict if it is clearly against the preponderance of the evidence or contrary to law. *Dedman v. Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). The test on review, where the motion is denied, is whether the verdict is supported by substantial evi-

dence. *Schaeffer v. McGhee*, 286 Ark. 113, 689 S.W.2d 537 (1985). It is only where there is no reasonable probability that the incident occurred according to the version of the prevailing party or where fair-minded men can only draw a contrary conclusion that a jury verdict should be disturbed. *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970).

*Pineview*, 298 Ark. at 89. The motion for new trial asks the trial court to determine whether the jury's award "was contrary to the preponderance of the evidence." Ark. R. Civ. P. 59(a)(6) (2003).

The phrase "was contrary to the preponderance of the evidence" was quoted verbatim in Wal-Mart's motion for a new trial. The motion for new trial was presented and denied by the trial court. The issue is presented and laid out sufficiently that this court should hear the denial of the motion for a new trial.

### Motion for New Trial

The new-trial motion tests the jury verdict after it is rendered. The directed-verdict motion tests the evidence before it is submitted to the jury.

A motion for a new trial asks the trial court to rule on whether the jury returned a verdict clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(6). On appellate review of the denial of a motion for a new trial, this court determines whether the verdict reached by the jury was supported by substantial evidence. *Pearson, supra.* A motion for a new trial is brought after the jury has returned a verdict. Ark. R. Civ. P. 59(b).

A motion for a directed verdict is brought before the jury is charged and retires to render a decision. *Willson Safety Prods. v. Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990); *see also Cathey v. State*, 351 Ark. 464, 95 S.W.3d 753 (2003). A motion for a directed verdict asks not whether the verdict reached by the jury is clearly contrary to the preponderance of the evidence, but rather asks whether there is sufficient evidence to submit an issue to the jury. A motion for a directed verdict is granted where the evidence is so insubstantial that a jury verdict on that evidence would have to be set aside. *Dorton v. Francisco*, 309 Ark. 472, 833 S.W.2d 362 (1992). A motion for a new trial is granted where the jury received sufficient evidence upon which to render a verdict,

but rendered a verdict that was clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(6). In *Yeager v. Roberts*, 288 Ark. 156, 702 S.W.2d 793 (1986), this court clarified the use of the two motions:

> A party does not have to make a motion testing the sufficiency of the evidence to go to the jury as a prerequisite to making a motion for a new trial. Motions for directed verdict and judgment notwithstanding the verdict are made to preserve a later argument on the sufficiency of the evidence to go to the jury. ARCP 59 specifically states a motion for a new trial may be granted for eight reasons, one of which is where the verdict is clearly contrary to the preponderance of the evidence. Such a motion does not test the sufficiency of the evidence and is not precluded by Rule 50(e).

*Yeager*, 288 Ark. at 157.

Still, some confusion has arisen in the law by the use of the term "sufficiency of the evidence," with respect to both a motion for a directed verdict and a motion for a new trial. As the majority notes, Ark. R. Civ. P. 50(e) was amended in 1983 to remove any implication that a motion for a new trial could be used after a jury returned its verdict to test whether the evidence was sufficient to submit the issue to the jury. There has been confusion in the past about just what is challenged by a motion for new trial. In *McFall Chevrolet Co. v. Collins*, 271 Ark. 469, 609 S.W.2d 118 (Ark. App. 1980), the court of appeals stated that:

> in order for an appellant to challenge the sufficiency of the evidence in a jury trial, he must either move for a directed verdict at the conclusion of all the evidence, move for a judgment notwithstanding the verdict, or move for a new trial because of insufficiency of the evidence. The failure to do one of these three requirements precludes raising the issue on appeal. Rule 50(e) (ARCP).

*McFall*, 271 Ark. at 470-471.[1] While the language of the court of appeals is not clear, it appears the court of appeals was indicating that a motion for new trial may be used to attack the sufficiency of

---

[1] The majority asserts that the cite to *McFall Chevrolet Co. v. Collins*, 271 Ark. 469, 609 S.W.2d 118 (Ark. App. 1980) is "inapposite," because it was decided prior to the 1983 amendment to Rule 50(e). The majority misunderstands the reason the case was cited.

the evidence submitted to the jury. Clearly, this is not so because a motion for new trial does not test the sufficiency of the evidence submitted to the jury. *Hall v. Grimmett*, 318 Ark. 309, 885 S.W.2d 297 (1994); *see also, Benton v. Barnett*, 53 Ark. App. 146, 920 S.W.2d 30 (1996). In *Majewski v. Cantrell*, 293 Ark. 360, 737 S.W.2d 649 (1987), this court noted the amendment to Rule 50 and stated:

> We note appellant's additional reference to a motion for new trial when discussing the sufficiency of evidence, and take this opportunity to mention our amendment of ARCP Rule 50(e) that omitted any reference to the motion for new trial. That amendment makes it clear that a party must test the sufficiency of the evidence by motions for directed verdict and judgment notwithstanding the verdict, not by a motion for new trial. *See In Re: Amendments to the Rules of Civil Procedure*, 279 Ark. 470, 651 S.W.2d 63 (1983).

*Majewski*, 293 Ark. at 363. The sufficiency of the evidence submitted to the jury must be tested by a motion for a directed verdict before the jury is charged. *Willson, supra*. Nonetheless, this court has continued to use the term "sufficiency of the evidence" in reference to a motion for a new trial. In *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997), this court stated:

> A motion for new trial based on Rule 59(a)(4) or (a)(5) challenges the sufficiency of the evidence to support a jury's factual determination of damages. *Kempner v. Schulte*, 318 Ark. 433, 885 S.W.2d 892 (1994); *National Bank of Commerce v. McNeill Trucking Co.*, 309 Ark. 80, 828 S.W.2d 584 (1992).

*Coca-Cola*, 328 Ark. at 669. While continuing to use the term "sufficiency of the evidence" has not resulted in greater clarity in this court's decisions, the decisions are not in error. As is evident in the above cite to *Coca-Cola*, in that case this court was examining whether the jury erred in reaching its verdict. This court was determining whether the verdict reached by the jury was supported by substantial evidence. This court was not examining whether there was sufficient evidence to submit the case to the jury. In a given case, there might be sufficient evidence to submit

---

The case was cited because it was a pre-amendment case and clearly shows the confusion that has existed regarding the two motions.

a case to a jury, but the verdict rendered on that evidence could be subject to a motion for a new trial where the jury makes a decision clearly contrary to the preponderance of the evidence. Such a verdict would not be supported by substantial evidence even though sufficient evidence was submitted to the jury.

The standard of review of a motion for a directed verdict and a motion for a new trial is stated in precisely the same words. The standard of review for both the denial of a directed-verdict motion and the denial of a motion for new trial is whether there was substantial evidence to support the jury's verdict. However, in the case of a directed-verdict motion, this court must determine whether there was substantial evidence to submit to the jury; in the case of a new trial motion, this trial court must determine whether the jury's verdict is supported by substantial evidence, or in other words, whether the verdict is clearly contrary to the preponderance of the evidence. The cases are not as clear on this point as they might be. *See Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240, 100 S.W.3d 715 (2003) and *Pearson, supra; see also, Dorton, supra*. However, one need only look to the nature of the two motions to understand that they test two very different events at trial. The directed-verdict motion tests whether the jury was left to speculation and conjecture and thus had no evidence on which to base a decision. *See St. Paul Fire & Marine Co. v. Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). The motion for a new trial tests whether the jury erred in reaching a decision on the evidence before it. Ark. R. Civ. P. 59(a)(6). I agree with the majority that a failure to move for a directed verdict precludes appellate review of whether there was sufficient evidence to submit the issue to a jury. However, this is an appeal from the denial of a motion for a new trial.

I would decide the issue of whether the jury's verdict was clearly against the preponderance of the evidence, and I would hold that the jury's verdict is supported by substantial evidence.

THORNTON, J., joins this concurrence.